[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 356 
The appellant, Chester Leon Whitley, Jr., was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975. Pursuant to the Habitual Felony Offender Act, §13A-5-9(c)(3), Code of Alabama 1975, he was sentenced to life imprisonment without parole.
The state's evidence tended to show that during the early morning hours of April 28, 1991, the appellant and the victim, Herbert Earl Adcock, were riding in an automobile and drinking alcohol with the appellant's wife, the appellant's brother, and Kathy Myers, the owner of the car. The car eventually stopped on Hitchetty Road, a deserted dirt road in Russell County, so that the appellant could urinate. As everyone got out of the car, the appellant asked Myers to give him her knife. She complied. Eventually, the appellant and the victim exchanged heated words and started fighting. Each pulled out a knife. The appellant grabbed the victim's knife with his right hand, cut him under the arm, and then continued to stab the victim until he fell on the road. The victim was stabbed 27 times: two times on the right shoulder, 9 times on the front of his body, and 16 times on his backside. The appellant and his brother dragged the victim's body to the edge of the woods. The body was discovered by turkey hunters later that morning.
On May 1, 1991, the appellant's brother spoke with the Russell County Sheriffs Department regarding the victim's death. After further investigation, the police issued arrest warrants for the four people who occupied the car on the night of the killing, including the appellant. On May 3, the appellant turned himself in and confessed to the stabbing.
The appellant presents five issues on appeal.
 I
Initially, the appellant contends that the circuit court erred when it denied his Batson v. Kentucky[1]
motion, arguing that the prosecution violated the Equal Protection Clause of the United States Constitution by exercising its peremptory strikes in a racially discriminatory fashion.
The United States Supreme Court held in Batson that the Equal Protection Clause prohibits the prosecution from using peremptory strikes to remove "potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. at 1719. The protections of Batson have since been extended to white defendants. Powers v. Ohio, ___ U.S. ___,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); Ex parte Bankhead,585 So.2d 112 (Ala. 1991). Once the appellant timely moves pursuant to Batson and makes a prima facie showing of discrimination, the burden shifts to the prosecution to produce race-neutral reasons to support each strike of a minority veniremember. See, e.g., Avery v. State, 545 So.2d 123
(Ala.Cr.App. 1988). The circuit court's ruling on the appellant's Batson motion will be reversed only if it is clearly erroneous. Jackson v. State, 549 So.2d 616
(Ala.Cr.App. 1989).
Here, both the appellant and the victim were white. Of the original 35 veniremembers, 12 were black. The state exercised 7 of its 11 peremptory strikes to remove blacks from the venire, while the appellant peremptorily removed 1 black veniremember. Four blacks served on the *Page 357 
jury. After the appellant made a prima facie showing of discrimination, the prosecution explained its rationale for each strike. Once the court determined that the prosecution's strikes were exercised systematically among blacks and whites, the Batson motion was denied.
At trial, the prosecution cited the following to support each strike of a minority veniremember:
 Juror number 106: Was a "child support client" in the district attorney's office and was unemployed.
 Juror number 115: Was 20 years old, single, and unemployed.
 Juror number 118: Had twice served on juries that returned acquittals in criminal cases.
 Juror number 121: Had three prior misdemeanor convictions and a prior felony charge.
 Juror number 148: Had a co-worker who had been prosecuted by the district attorney who tried this case. Juror was present at co-worker's trial and appeared friendly with him.
 Juror number 160: Had five prior misdemeanor convictions.
 Juror number 162: Indicated during voir dire that her uncle had been a defendant in a murder case and that the victim in that case had been her cousin.
The fact that a veniremember previously served on a jury that rendered a not-guilty verdict is a race-neutral reason for exercising a peremptory strike. See, e.g., Whittlesey v.State, 586 So.2d 31 (Ala.Cr.App. 1991); Heard v.State, 584 So.2d 556 (Ala.Cr.App. 1991). Where a veniremember has prior misdemeanor convictions or prior or pending felony convictions or charges, his removal from the venire has been upheld as race-neutral. See, e.g., Yelderv. State, 596 So.2d 596 (Ala.Cr.App. 1991); Sims v.State, 587 So.2d 1271 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1179, 117 L.Ed.2d 423 (1992);Whittlesey, supra; Cowan v. State,579 So.2d 13 (Ala.Cr.App. 1990). Also, striking a veniremember because he or she has a family member, friend, or associate who was a defendant in a criminal case is a race-neutral reason. See, e.g., Fisher v. State, 587 So.2d 1027 (Ala.Cr.App.), writ denied, 587 So.2d 1039 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); Bass v.State, 585 So.2d 225 (Ala.Cr.App. 1991); Stephens v.State, 580 So.2d 11 (Ala.Cr.App. 1990), aff'd, 580 So.2d 26
(Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 176,116 L.Ed.2d 138 (1991); Currin v. State, 535 So.2d 221
(Ala.Cr.App.), writ denied, 535 So.2d 225 (Ala. 1988). Cf.,Scott v. State, 599 So.2d 1222 (Ala.Cr.App.), writ denied, 599 So.2d 1229 (Ala. 1992) (potential hostility or prejudice against district attorney's office due to well-publicized investigation of former supervisor is race-neutral reason for exercising peremptory strike).
Removal of a veniremember who attempts to receive child-support through the district attorney's office is also based on considerations other than race. See, e.g.,Heard, supra. See also, Bedford v. State,548 So.2d 1097 (Ala.Cr.App. 1989) (juror had prior contacts with district attorney). Finally, the prosecution's exercising peremptory strikes to remove young, single, and unmarried persons from the venire is race-neutral. See, e.g.,Stephens, supra; Harris v. State,545 So.2d 146 (Ala.Cr.App. 1988); Currin, supra; Mathews v.State, 534 So.2d 1129 (Ala.Cr.App. 1988).
The appellant also argues that the prosecution did not exercise its strikes systematically, leaving some whites on the jury who possessed characteristics cited by the state as rationale for the removal of similarly situated black veniremembers. More specifically, the appellant points to juror number 128, a white male, whose uncle was prosecuted for receiving stolen property and whose grandmother was murdered. The appellant argues that juror number 162, a black female stricken because her uncle was once a defendant in a criminal case and because her cousin was murdered, was thus removed solely on the basis of her race.
At trial, however, the state explained that juror number 162 was removed because her uncle was a defendant in amurder case. Further, juror number 162 was not removed because she had a relative *Page 358 
who had been murdered, but because her uncle had been tried for killing that relative. The prosecution cited the fact that juror number 128 had a relative that had been murdered as the motivating reason why it did not strike him from the jury. It is logical, not racist, that a prosecutor in a murder case would want to have sitting on the panel a juror who would tend to be favorable to the state. See, generally, Bailey 
Rothblatt, Successive Techniques for Criminal Trials
§ 6:35 (2d ed. 1985). See also, 5 Am. Jur. TrialsSelecting the Jury — Plaintiff's View § 3 (1966).
After reviewing the facts as recited above, we find no evidence of discrimination in the prosecution's use of its peremptory strikes. Thus, the circuit court did not err in denying the appellant's Batson motion.
 II
The appellant also contends that the circuit judge erred when, upon the jury's request for additional written definitions of "murder" and "manslaughter," he gave them oral instructions that omitted portions of the original charges. More specifically, the appellant contends that the judge erred in not reinstructing them on "heat of passion" and "mistaken self-defense," arguing that these are alternative definitions of manslaughter.
At trial, the judge instructed the jury on the elements of murder and the lesser included offense of manslaughter. When the appellant objected to the court's refusing his requested charges on "heat of passion" and "mistaken self-defense," the judge recalled the jury and thoroughly explained each of these principles.
Later, the jury requested additional, written definitions of "murder" and "manslaughter." After informing the jury that he could not give them written instructions to take to the jury room, the judge orally defined murder and manslaughter, explaining the latter as follows:
 "Manslaughter, under Alabama law, is this: A person commits the crime of manslaughter if he recklessly causes the death of another person. A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk that a particular result will occur. The risk must be of such a nature and degree that to disregard it would be a gross deviation from the standard of conduct that a reasonable person would have in that situation.
 "To convict of manslaughter, the State must prove beyond a reasonable doubt each of the following elements: First, that Herbert Earl Adcock is dead. And, second, that the Defendant, Chester Leon Whitley, recklessly caused the death of Herbert Adcock. That would be the elements of manslaughter."
The trial judge then told the jury that he did not "want to give [them] more instructions than what [they] were requesting," nor did he "want to not answer the questions that [they did] have." He then asked the jury if he had answered its questions and if it had any other questions. The jurors conversed among themselves until the foreperson responded that the jury was satisfied.
After the jury retired to deliberate, the appellant objected to the court's failure to reinstruct on "heat of passion." He did not, however, similarly object to the court's failure to give an additional definition of "mistaken self-defense." By not objecting to the court's omission of these additional charges until after the jury retired, the appellant failed to preserve either argument for review. Turrentine v.State, 574 So.2d 1006 (Ala.Cr.App. 1990); Goins v.State, 521 So.2d 97 (Ala.Cr.App. 1987); Rule 21.2, A.R.Crim.P. Further, by completely failing to object to the court's omission of an additional "mistaken self-defense" charge, the appellant did not preserve that argument.Turrentine, supra; Watkins v. State,565 So.2d 1227 (Ala.Cr.App. 1990). Moreover, "mistaken self-defense" does not authorize by itself, a charge on manslaughter. See commentary to § 13A-6-4 under heading "Imperfect Defense."
Even if the appellant had correctly preserved these arguments, they would both fail on the merits. A "trial judge is *Page 359 
not required to repeat any other part of his oral charge when answering a specific inquiry from the jury, and it is assumed that the jury will consider the previously given instructions along with those given in the supplemental charge."Fountain v. State, 586 So.2d 277, 281
(Ala.Cr.App. 1991). See also Brannon v. State,549 So.2d 532 (Ala.Cr.App. 1989); Davis v. State,440 So.2d 1191 (Ala.Cr.App. 1983), cert. denied, 465 U.S. 1083,104 S.Ct. 1452, 79 L.Ed.2d 770 (1984). In answering the question "as simply and plainly as possible," the court has "no need . . . to reinstruct the jury on all the elements of [manslaughter] that were covered at length in the initial oral charge."Brannon, 549 So.2d at 541. Repeating elements previously covered only adds to the jury's confusion, especially when the jury signifies that its question has been answered. See, e.g., Brannon, supra; Davis, supra.
We hold that the circuit judge did not err in failing to reinstruct the jury on the elements of "heat of passion" and "mistaken self-defense." Brannon, supra.
 III
The appellant next contends that the circuit court erred when it allowed the state to elicit testimony from the investigating officer, Lieutenant John O'Steen, regarding an out-of-court statement made by the appellant's wife.
The appellant, however, has failed to preserve this argument for review. At trial, the appellant did not state specific grounds when he made the following objection during the state's redirect examination of Lt. O'Steen:
 "[PROSECUTING ATTORNEY]: Lieutenant O'Steen, isn't it a fact that in [the appellant's wife's] statement, she told you all that while they were at the Spectrum Store —
 [DEFENSE COUNSEL: Your Honor, I'm going to object. May we approach?
"THE COURT: Come up just a moment.
"(Bench conference, off record)
 "THE COURT: Overruled on the basis that the door has been opened."
A general objection specifying no grounds preserves nothing for review. Thompson v. State, 575 So.2d 1238
(Ala.Cr.App. 1991).
Further, even if the appellant had correctly preserved this argument, the circuit judge did not err in allowing the testimony. The record reveals that Lt. O'Steen received statements from the appellant, his wife, and Kathy Myers. The latter two people, however, did not testify at trial. During his cross-examination of Lt. O'Steen, defense counsel "opened the door" when he asked the officer the following questions regarding information that he received, not from the appellant, but from the out-of-court statements of the appellant's wife and Kathy Myers:
 "[DEFENSE COUNSEL]: During your investigation, Lieutenant, did you find any indication that [the victim] was abducted or kidnapped from the [night club from which he had left with the appellant]?
 "[LT. O'STEEN]: It appeared to be an indication that he was lured to [the area where he was killed].
"[DEFENSE COUNSEL]: That he was lured there?
 "[LT. O'STEEN]: Yes, sir, for the purpose of the assault. That was done through the interviews with [the appellant's wife] and with Kathy Myers.
". . . .
 "[DEFENSE COUNSEL]: Do you know why, back at the preliminary hearing, [the other investigating officer's] story would have been different than your testimony now that [the victim] was lured there?
 "[LT. O'STEEN]: There is some indications that that was the case, but I don't know that it was stuff that we could concrete [sic] put our finger on. Like I said, it was [the appellant's wife's] statement that says that her husband told Kathy Myers at a service station in Columbus that he wanted —
"[DEFENSE COUNSEL]: We'll get into that. . . ."
". . . . *Page 360 
 "[DEFENSE COUNSEL]: And do you know why [the other officer] would have said on that date that [the victim] left of his own volition the [night club]?
 "[LT. O'STEEN]: Well, apparently, [the victim] left with them willingly. He did not know what their intent —
"[DEFENSE COUNSEL]: Thank you, sir.
 "[LT. O'STEEN]: — was or that they were luring him."
When the defense counsel "on cross-examination of a witness elicits part of a conversation, the State may in rebuttal show the entire conversation," even if the evidence, in the first place, was illegal. Logan v. State, 291 Ala. 497, 502,282 So.2d 898, 903 (1973). See also Stockard v. State,391 So.2d 1060 (Ala. 1980); Lewis v. State,549 So.2d 620 (Ala.Cr.App. 1989); C. Gamble, McElroy's AlabamaEvidence § 316.01 (4th ed. 1991). See generally,Bolden v. State, 568 So.2d 841 (Ala.Cr.App. 1989). The state, however, is limited to introducing "only so much of the remainder of the statement or conversation . . . as relates to the subject-matter of the part brought out by the [appellant]."McElroy's, supra. See also, Stockard, 391 So.2d at 1064.
During redirect examination of Lt. O'Steen, the state's questions regarding the statements made by the appellant's wife and Kathy Myers were limited solely to the issue of whether the appellant had told them, prior to their going to Hitchetty Road, that he planned on assaulting the victim. Obviously, the state's questions were related to the appellant's inquiries regarding whether the victim was "lured" to the place where he was killed. Thus, the circuit court did not err in allowing the state to elicit this testimony. See, e.g., Stockard, supra.
 IV
The appellant next contends that the circuit court committed reversible error when it received into evidence five photographs that depicted the victim's corpse at the scene of the crime. More specifically, he argues that the photographs were excessively gruesome, were cumulative, were used to inflame and prejudice the jury, and did not prove or disprove a material fact or issue.
During the testimony of Dr. Allen Stillwell, the forensic scientist who performed the victim's autopsy, the state produced five photographs of the victim's corpse taken at the scene of the crime. State's exhibit number 13 was a frontal shot of the corpse, while number 14 was a close-up photo of the victim's face. From these photographs, Dr. Stillwell identified the victim as the corpse he examined. State's exhibits number 15, 16, and 17 depicted the corpse lying in various positions. Dr. Stillwell identified the victim's stab wounds from these pictures.
Photographs of the victim's corpse are admissible if they tend to "illustrate or elucidate some . . . relevant fact or evidence." Bankhead, 585 So.2d at 118; Magwood v.State, 494 So.2d 124, 141 (Ala.Cr.App. 1985), aff'd,494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599,93 L.Ed.2d 599 (1986); McElroy's § 207.01(2). Photographs can be received "even though they may be cumulative, demonstrative of undisputed facts, or gruesome."Hopkins v. State, 429 So.2d 1146, 1157
(Ala.Cr.App. 1983) (citations omitted); Hamrick v.State, 548 So.2d 652, 654 (Ala.Cr.App. 1989). See alsoEx parte Siebert, 555 So.2d 780 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). The admissibility of photographs is within the discretion of the trial judge. Bankhead, supra; Holder v.State, 584 So.2d 872 (Ala.Cr.App. 1991).
Thus, the circuit court did not err when it received into evidence five photographs of the victim's corpse that were used to identify the victim and his stab wounds. See, e.g.,Bankhead, supra; Parker v. State,587 So.2d 1072 (Ala.Cr.App. 1991); Ham v. State, 540 So.2d 805
(Ala.Cr.App. 1988); Burton v. State, 521 So.2d 91
(Ala.Cr.App. 1987). See also Siebert, supra.
 V
Finally, the appellant contends that the circuit court erred when it denied his *Page 361 
pro se motion for a new trial. More specifically, he argues that he should have been afforded a new trial due to prejudicial comments made by the prosecution during closing arguments. The appellant, however, made no objections during the prosecutor's closing arguments. Thus, the alleged prejudicial marks do not appear in the record.
"This court is bound by the record and not by allegations or arguments in brief reciting matters not disclosed by the record." Webb v. State, 565 So.2d 1259, 1260
(Ala.Cr.App. 1990). See also Acres v. State,548 So.2d 459 (Ala.Cr.App. 1987). Further, we cannot predicate error from a silent record. Owens v. State, 597 So.2d 734
(Ala.Cr.App. 1992); Woodyard v. State, 428 So.2d 136
(Ala.Cr.App. 1982), aff'd, 428 So.2d 1313 (Ala.), cert. denied,462 U.S. 1136, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983).
For the foregoing reasons, the judgment in this case is affirmed.
AFFIRMED.
All the Judges concur.
[1] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)