634 So.2d 1034 (1993)
Charles Walter WILLIAMS, alias
v.
STATE.
CR-91-1259.
Court of Criminal Appeals of Alabama.
February 12, 1993.
Rehearing Denied March 26, 1993.
Dissenting Opinion March 26, 1993.
Certiorari Stricken May 4, 1993.
*1035 Samuel Bauer, Hilton Head Island, SC, for appellant.
James H. Evans, Atty. Gen., and Anita Young, Asst. Atty. Gen., for appellee.
Dissenting Opinion of Judge Bowen March 26, 1993.
Alabama Supreme Court 1921043.
PATTERSON, Judge.
The appellant, Charles Walter Williams, was convicted after a jury trial of shooting into an occupied vehicle, in violation of § 13A-11-61, Code of Alabama 1975, and was sentenced to 11 years' imprisonment. He raises two issues on appeal.

*1036 I
The appellant, who is white, argues that the trial court erred by denying his motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because, he says, the state exercised its peremptory challenges against white veniremembers in a racially discriminatory manner. At trial, after the jury was selected, the following occurred:
"THE COURT: Now does either side have any objection to the way the other side exercised its peremptory strikes?
"MR. BAUER [Defense counsel]: Yes, your honor.
". . . .
"MR. BAUER: [the prosecutor] used eight of her nine strikes to exclude white people from the jury. The defendant is white. Although the Supreme Court has not recognized the exclusion of white peremptory challenges as unconstitutional, I would like to protect the record in that regard. I do feel that using eight of the nine strikes to strike white people, while black people similarly situated without the issue of race were not struck."
Without deciding whether Batson applies to the striking of white veniremembers, the trial court requested that the state give reasons for its peremptory challenges. The state gave its reasons without objecting or arguing that Batson does not apply to the striking of white veniremembers. The prosecutor explained her strikes of white veniremembers as follows:
No. 22: "She was the woman on the front row. She had thick glasses. During most of the questioning she had her hands on her face. She appeared to be bored. She said her son was involved in a shooting and she didn't want to discuss it. She looked away. She looked up at the ceiling. She looked down. She fidgeted in her seat. I felt that she would not be fair. I gathered she would not give the state a fair trial, much less the defendant."
_________________________________________
No. 29: "She was the elderly lady with the walker. She appeared not to be with us. During a lot of the questioning she would look and look away. It appeared to me that she was in some pain. I saw that she moved her walker. She was stretching her leg. I felt that she would not be able to sit through a trial. I watched her when she first came in. At the first sidebar, she left. She was in the jury room. She was like the last person to come out. When the first black lady came out, she did not immediately come out. The door was shut and she took her time coming out."
______________________________________
No. 1: The prosecutor stated that this veniremember sat on a jury in a rape case where the defendant was found not guilty. She also stated that she believed that this veniremember would not be a "fair candidate" for this case.
________________________________________
No. 13: "She was sitting on the back row. She said her husband was a minister. During the voir dire, very quiet. She looked away. She looked to the people sitting next to her, B.H. and M.S. When we asked questions she just didn't appear to be with us."
________________________________________
No. 15: "I have got a note; but I didn't finish the note. I said `talked.' So, she must have said something to the questions as to did she know any of the people involved in the case.... Not officers, but did she know any of the witnesses or anything. I put `talked to somebody.' I don't have who she talked to. Maybe she talked to some jurors."
______________________________________
No. 31: The prosecutor stated that she struck this veniremember because she was unemployed and that she also struck a black veniremember because she was unemployed.
______________________________________
No. 12: "No reason other than I struck number 31, young white female. I struck her as well. I also struck a young black female. Nothing particular stood out one way or the other."

*1037 _________________________________________
No. 30: "He was the guy that spoke with a lisp. His brother was murdered out of town. [Defense counsel] asked him about giving the defendant a fair trial. I saw him look at the defendant. Gave him a funny look. He looked to the woman sitting next to him. He gave the defendant a really hard look. I didn't feel that he would be fair."
_________________________________________
The court then ruled as follows:
"Oh, I see. Okay. All right. Well, I will say that a surprising number of these are unexplained. There are two for which [there is] no reason at all, ... just body language. So, it makes an iffy kind of situation. The problem is that there weren't but five jurorsfive black jurors on the panel anyway. She struck one of them. So, she struck 20 percent black, 20 percent of the blacks. If she really didn't have much reason, it looks to me like [the prosecutor] ran out of reasons to strike people and was just following vague hunches. If you don't have a real strong reason, I don't know why you shouldn't follow vague hunches. I can't really say with only four leftfour blacks left, she should have found a vague hunch against one of them instead of somebody else. If this jury had a large percentage of blacks, it would have been more suspicious. This is just sort of [an] iffy situation. Before I would decide on either side's peremptory challenges, I would have a stronger feeling than iffy feeling, therefore, the Batson challenge is denied. But, [defense counsel], I appreciate your making that a matter of record. I do think that the rule cuts both ways."
We interpret the trial court's ruling to be that Batson does apply to the striking of white veniremembers and that the state's explanations, considering all the surrounding circumstances, were race neutral.
The appellant argues that the state improperly exercised its strikes of white veniremembers solely on account of race. Before we discuss whether the state's strikes were based on race-neutral reasons, we must address the issue of whether Batson applies to the striking of white veniremembers. In Batson, the United States Supreme Court held that a prosecutor could not exercise peremptory challenges against black veniremembers solely because of their race. The Court stated the following:
"The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, Strauder [v. West Virginia], 100 U.S. [303], 305 [, 25 L.Ed. 664 (1880)], or on the false assumption that members of his race as a group are not qualified to serve as jurors...."
Batson, 476 U.S. at 86, 106 S.Ct. at 1717 (emphasis added; footnote and citations omitted). In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court held that a white defendant has standing to object to the state's unconstitutional exercise of peremptory challenges against black veniremembers and stated the following:
"[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race."
Id. at 409, 111 S.Ct. at 1370 (emphasis added). The Court also stated, "While States may prescribe relevant qualifications for their jurors, see Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), a member of the community may not be excluded from jury service on account of his or her race." Id. at 407, 111 S.Ct. at 1369 (emphasis added; citations omitted).
While blacks, see Batson, 476 U.S. 79, 106 S.Ct. 1712; Hispanics, see United States v. Chinchilla, 874 F.2d 695 (9th Cir.1989); United States v. Alcantar, 832 F.2d 1175 (9th Cir.1987); Native Americans, see United States v. Chalan, 812 F.2d 1302 (10th Cir. 1987); and Asians, see Kline v. State, 737 *1038 S.W.2d 895 (Tex.App.1987), have been held to be cognizable racial groups for Batson purposes, we have found only two cases in which whites have been held to be a cognizable racial group. In Government of Virgin Islands v. Forte, 865 F.2d 59 (3d Cir.1989), cert. denied, ___ U.S. ___, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991), the court held that the appellant's trial counsel was ineffective for failing to preserve his Batson claim because, under the circumstances, the appellant, who was white, was a member of a cognizable racial group in the Virgin Islands, the population of which is predominantly black. In Roman v. Abrams, 822 F.2d 214 (2d Cir.1987), cert. denied, 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989), the court held that whites are a cognizable group for purposes of a fair cross-section claim. The Roman court stated the following:
"It is plain that the exclusion of entire racial groups from jury service for reasons wholly unrelated to the ability of the individuals to serve as jurors in a particular case is squarely within these parameters. Though such wholesale exclusion is more often practiced against minorities or traditionally disadvantaged members of society, the exclusion of groups normally in the majority is no less objectionable for it arbitrarily deprives that group of a share of the responsibility for the administration of justice, deprives the defendant of the possibility that his petit jury will reflect a fair cross section of the community, and gives every appearance of unfairness."
822 F.2d at 228 (emphasis added). Although Forte is distinguishable from the instant case, the above-quoted passage from Roman best illustrates our concern with the striking of white veniremembers purely on account of race.
We believe that the failure of white veniremembers to fall within a cognizable group should not preclude a defendant from successfully raising a Batson objection to the state's striking of white veniremembers for racial reasons. Batson and Powers both hold that a state is prohibited from striking veniremembers on account of their race. It would be terribly unjust for us to recognize that Batson applies to the state's striking of blacks, Hispanics, Native Americans, and Asians when they were struck for racial reasons, but does not apply to the state's striking of white veniremembers when those strikes are exercised on account of race. We, therefore, hold that Batson does apply to the striking of white veniremembers when they are struck on account of their race.
We now address the issue of whether the state's reasons for its strikes were sufficiently race neutral and we conclude that they were at least minimally sufficient. When offering the reasons for its strikes, the state had the burden of giving "clear, specific, and legitimate reason[s] for the challenge[s] which relate[] to the particular case to be tried, and which [are] nondiscriminatory...." Ex parte Branch, 526 So.2d 609, 623 (Ala.1987) (emphasis in original). "Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext." Id. at 624 (citation omitted). We may reverse only if the trial court's ruling was "clearly erroneous." Id. at 625.
The prosecutor stated that she struck veniremember no. 22 because she appeared to be bored, she fidgeted in her seat, she looked around the room, and she did not want to discuss her son's involvement in a shooting. The fact that this veniremember would not discuss her son's involvement in a shooting was a legitimate concern. This reason and the veniremember's boredom and fidgeting are race-neutral reasons for this strike. Cf. Mitchell v. State, 579 So.2d 45 (Ala.Cr.App.1991), cert. denied, 596 So.2d 954 (Ala.1992) (veniremember's evasive or ambiguous answers held race neutral).
The prosecutor stated that she struck veniremember no. 29 because she was elderly; she appeared to be in pain and she was stretching her leg; at the first sidebar, she left the jury box and went into the jury room; and she was the last person to come out of the jury room. The prosecutor also stated that, based on her observations, she felt that this veniremember would not be able to sit through a trial. A veniremember's *1039 physical disability or discomfort that might hinder the veniremember's ability to serve on the jury is a legitimate race-neutral reason. Cf. Demunn v. State, 627 So.2d 1005 (Ala.Cr.App.1991), aff'd, 627 So.2d 1010 (Ala.1992) (strike of veniremember on basis of mental impairments or disabilities held race neutral).
The prosecutor stated that she struck veniremember no. 1 because the veniremember had served on a jury that found a defendant not guilty. This is a sufficiently race-neutral reason. Whitley v. State, 607 So.2d 354 (Ala.Cr.App.1992); Whittlesey v. State, 586 So.2d 31 (Ala.Cr.App.1991).
The prosecutor stated that she struck veniremember no. 13 because her husband was a minister, because she looked around during voir dire, and because she did not appear to be paying attention to the proceedings. Although we have insufficient facts from which to determine whether the fact that this veniremember's husband was a minister was a race-neutral reason, a veniremember's inattentiveness is a sufficiently race-neutral reason for her being stricken. Mitchell, 579 So.2d at 49; Nesbitt v. State, 531 So.2d 37 (Ala.Cr.App.1987).
The prosecutor stated that she struck veniremember no. 15 because she had made a note, which she did not complete, that this veniremember had "talked" to someone, although the prosecutor could not recall to whom. Although the prosecutor could not recall to whom this veniremember was talking, talking during the voir dire is a sufficiently race-neutral reason. Stephens v. State, 580 So.2d 11 (Ala.Cr.App.1990), aff'd, 580 So.2d 26 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991) (inattentiveness, i.e. talking during voir dire, held race neutral reason for strike). Even if we considered the fact that the prosecutor could not remember to whom this veniremember was talking as indicating the complete absence of a reason for this strike, considering all the circumstances surrounding the selection of the jury, we conclude that the prosecutor did not exercise this peremptory challenge in a discriminatory manner. See Bui v. State, 627 So.2d 855 (Ala.1992); Ex parte Demunn, 627 So.2d 1010 (Ala.1992).
The prosecutor stated that she struck veniremember no. 31 because she was unemployed. This is a sufficiently race-neutral reason, especially in light of the prosecutor's unrefuted statement that she also struck a black veniremember for this same reason. Steeley v. State, 622 So.2d 421 (Ala.Cr.App. 1992) (strike of black veniremember because member was unemployed upheld as race neutral where white veniremember struck for same reason).
The prosecutor stated that she struck veniremember no. 12 because she was young and a female. These are a sufficiently race-neutral reasons especially in light of the prosecutor's unrefuted statement that she also struck a black veniremember for these same reasons. Id. (strike of black veniremember because of age held race neutral where white veniremember struck for same reason).
The prosecutor stated that she struck veniremember no. 30 because his brother had been murdered, because he gave the appellant a "funny" look and a "hard" look, and because she did not feel that this veniremember would be fair to the appellant. When considered together, these reasons are race neutral.
Based on the foregoing, we cannot say that the trial court's ruling was clearly erroneous.

II
The appellant argues that it was plain error for the trial court to fail to instruct the jury regarding the requisite intent for the charged offense. This argument, however, is procedurally barred because this ground for objection was not asserted at trial. Kyser v. State, 513 So.2d 68 (Ala.Cr. App.1987).
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
*1040 TAYLOR, McMILLAN and MONTIEL, JJ., concur.
BOWEN, P.J., concurs in result only and dissents as to part I.
BOWEN, Presiding Judge, dissenting.[1]
Although the judgment of the circuit court should be affirmed, I dissent from the majority's conclusions in Part I that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applies to strikes of white veniremembers generally. I also dissent from the majority's holding that, assuming Batson does apply to whites, the reasons offered by the prosecutor in this case were sufficiently race-neutral.

I.
Batson v. Kentucky was never intended to apply to the strikes of white veniremembers generally. In Batson, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. at 1719 (emphasis added). The Court made it clear that such action violated both the defendant's equal protection rights and those of the excluded juror. Id. at 85-88, 106 S.Ct. at 1716-18. With regard to the latter, the Court stated:
"Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial. A person's race simply `is unrelated to his fitness as a juror.' As long ago as Strauder [v. West Virginia, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880)], therefore, the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror.
"The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is `a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others."
Id. at 87-88, 106 S.Ct. at 1718 (bracketed material added by Batson court) (citations omitted and emphasis added).
In setting forth the procedure by which a defendant could challenge the prosecution's use of its peremptory challenges, the Court stated that the burden was initially on the defendant to establish a prima facie case of racial discrimination. Id. at 93, 106 S.Ct. at 1721. "To establish such a case, the defendant first must show that he is a member of a cognizable racial group [capable of being singled out for differential treatment], Castaneda v. Partida, [430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." Batson, 476 U.S. at 94, 96, 106 S.Ct. at 1722, 1723 (emphasis added). Although Batson involved a black defendant who challenged the prosecution's use of its peremptory strikes to remove black veniremembers from the jury, and despite the Court's repeated use of "black" with reference to both defendant and struck veniremembers, it is clear from the reference to Castaneda that the Court did not intend to limit its holding to situations involving blacks only.
Castaneda involved a claim of "discrimination against Mexican-Americans in the [Texas] grand jury selection process." 430 U.S. at 483-84, 97 S.Ct. at 1274-75. There the Court stated:
"[I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to *1041 establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the law, as written or as applied. Hernandez v. Texas, [347 U.S. 475, 478-79, 74 S.Ct. 667, 670-71, 98 L.Ed. 866 (1954)]."
Castaneda, 430 U.S. at 494, 97 S.Ct. at 1280.
Hernandez, the case cited in Castaneda, also involved a claim of racial discrimination in the grand jury selection process. In Hernandez, the Court observed:
"Throughout our history differences in race and color have defined easily identifiable groups which have at times required the aid of the courts in securing equal treatment under the laws. But community prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection. Whether such a group exists within a community is a question of fact. When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written or as applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated."
347 U.S. at 478, 74 S.Ct. at 670.
Thus, while the Supreme Court clearly did not intend to limit Batson to blacks, it is clear that the Court did intend to limit Batson's application to racial minorities and other historically disadvantaged groups,[2] i.e., those persons who have typically been the target of discrimination based on their membership in a specific group. As the First Circuit Court of Appeals has stated, "the [Batson] Court's specific reference to Castaneda, which found Mexican-Americans a cognizable group under the equal protection clause, means that its decision applies to all ethnic and racial minority groups in addition to blacks that meet its criteria." United States v. Bucci, 839 F.2d 825, 833 (1st Cir.) (emphasis added), cert. denied, 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988). See also, e.g., United States v. Chinchilla, 874 F.2d 695, 698 (9th Cir.1989) (Hispanics are a cognizable racial group for Batson purposes); United States v. Chalan, 812 F.2d 1302, 1314 (10th Cir.1987) (American Indians are a cognizable racial group for Batson purposes); Kline v. State, 737 S.W.2d 895, 899 (Tex.App. 1987) (Asians are a cognizable racial group for Batson purposes).
Within the past two years, the United States Supreme Court has greatly expanded the scope of Batson with regard to persons who may make a Batson challenge. In Powers v. Ohio, 499 U.S. 400, 402, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991), which was released in April 1991, the Court held "that a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." (Emphasis added.) Although Powers involved a white defendant, it is now clear that any criminal defendant may challenge the prosecution's strikes on the ground that those strikes were racially motivated. See, e.g., Bui v. Alabama, 499 U.S. 971, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991) (vacating Asian defendant's conviction and remanding "for further consideration in light of Powers"); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (addressing Latino defendant's Batson challenge without any discussion of defendant's standing to assert challenge); Zumbado v. State, 615 So.2d 1221 (Ala.Cr.App.1992) (holding that trial court erred in denying Costa Rican defendant's Batson motion on the ground that the defendant was not black). Some two months after deciding Powers, the Supreme Court held that Batson applies to the use of peremptory strikes by litigants in a civil case. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).[3] A year later the Court held that a criminal defendant's use of peremptory strikes may be challenged by the prosecution. Georgia v. *1042 McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).[4]
Powers, Edmonson, and McCollum extended Batson only with regard to the parties who may assert a Batson challenge. These cases extend Batson so as to permit any party in any case to challenge the opposing party's use of peremptory challenges in a racially discriminatory manner. In Powers, the Court indicated that this extension was necessary, in part, because the excluded juror was unlikely to be in a position to challenge the discriminatory practice. 499 U.S. at 413-14, 111 S.Ct. at 1372-73. Powers, Edmonson, and McCollum clearly removed Batson's requirement of racial identity between the party challenging the use of a peremptory strike and the veniremember who was the subject of the challenged strike. However, those cases, all of which involved strikes of black veniremembers, did not alter Batson's requirement that the juror who was the subject of the challenged strike be a member of a constitutionally "cognizable group" under Castaneda v. Partida and Hernandez v. Texas. See United States v. Casper, 956 F.2d 416, 418 (3d Cir.1992) (in a post-Powers case, court stated that "the defendant must show that the challenged jurors were members of a cognizable racial or ethnic group"); State v. Jordan, 171 Ariz. 62, 66, 828 P.2d 786, 790 (App.1992) (in a post-Powers case, court stated that "[t]he initial inquiry for a prima facie showing is whether the prospective juror is a member of a cognizable racial group"). This Court has indicated its adherence to this requirement in several post-Powers cases. See Whitley v. State, 607 So.2d 354, 356 (Ala.Cr.App.1992) ("[o]nce the appellant timely moves pursuant to Batson and makes a prima facie showing of discrimination, the burden shifts to the prosecution to produce race-neutral reasons to support each strike of a minority veniremember") (emphasis added); Kelley v. State, 602 So.2d 473, 476 (Ala.Cr.App.1992) (same); Johnson v. State, 601 So.2d 1147, 1148 (Ala.Cr.App. 1992) (same). A majority of other states have also indicated that, even after Powers, a Batson challenge may only be made to strikes of veniremembers who are members of a constitutionally cognizable group. See Bush v. State, 585 So.2d 1262, 1267-68 (Miss. 1991) (after Powers, "a white defendant must show that the prosecutor has used peremptory challenges on persons of race [sic] and that the circumstances give rise to the inference that the prosecutor used the peremptory challenges in order to strike minorities") (emphasis added); State v. Hernandez, 589 N.E.2d 1310, 1313 (Ohio) ("Batson recognized that the Equal Protection Clause of the United States Constitution precluded purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from service on petit juries") (emphasis added), cert. denied, ___ U.S. ___, 113 S.Ct. 279, 121 L.Ed.2d 206 (1992); State v. Henderson, 112 Or.App. 451, 829 P.2d 1025, 1027 n. 1 (observing that Powers and Edmonson "indicate clearly that the Court, rather than limiting Batson, is extending it to the point where peremptory challenges might be a thing of the past in all cases in which a juror who is a member of a minority group is challenged without cause") (emphasis added), reversed on related grounds, 315 Or. 1, 843 P.2d 859 (1992); Salazar v. State, 818 S.W.2d 405, 408 (Tex.Cr.App.1991) (to establish a prima facie case under Batson, defendant must "show that the prosecutor has used peremptory strikes against minorities and that the attendant circumstances raise an inference of discrimination") (emphasis added); State v. Span, 819 P.2d 329, 340 (Utah 1991) (under Batson, "some evidence is required that the excluded juror is a member of a cognizable minority group") (emphasis added).
I am aware that the Louisiana Supreme Court has effectively held that strikes of white veniremembers are subject to a Batson challenge. State v. Knox, 609 So.2d 803, 806 (La.1992). However, I cannot agree with that court that this result is dictated by the action of the United States Supreme Court in Georgia v. Carr, ___ U.S. ___, 113 S.Ct. 30, 121 L.Ed.2d 3 (1992). While Georgia v. *1043 McCollum was pending on certiorari,[5] the Georgia Supreme Court decided State v. Carr, 261 Ga. 845, 413 S.E.2d 192 (1992), which involved the strikes of white veniremembers by a black defendant. Relying on its decision in State v. McCollum, the Georgia Supreme Court again held that Batson did not apply to defense strikes. On October 5, 1992, the United Stated Suprmeme Court granted the prosecution's petition for writ of certiorari, vacated the judgment in State v. Carr, and, without any further discussion, "remanded [the case] to the Georgia Supreme Court for further consideration in light of Georgia v. McCollum." Georgia v. Carr, ___ U.S. ___, 113 S.Ct. 30. The Louisiana Supreme Court interpreted the United States Supreme Court's action in remanding Carr to mean "that the McCollum decision extends to the circumstance at issue in this case where, just as in Carr, a black defendant allegedly exercised, or expressed the intention of exercising, racially based peremptory challenges against white prospective jurors." State v. Knox, 609 So.2d at 806 (emphasis added).
I cannot agree with that interpretation. The question presented by the petition for certiorari in Carr was whether Batson applied to defense strikes, see 60 U.S.L.W. 3739, not whether Batson applied to strikes of white veniremembers. The United States Supreme Court had held in Georgia v. McCollum that Batson does apply to defense strikes and, quite logically, vacated the Georgia Supreme Court's contrary decision in State v. Carr. Because the question of whether Batson applies to strikes of white veniremembers was not presented in Carr, I do not think that the United States Supreme Court's action in remanding that case should be construed as indicative of its position on that question.
In holding that Batson applies to strikes of white veniremembers generally, the majority relies on decisions by two federal circuit courts, Government of the Virgin Islands v. Forte, 865 F.2d 59 (3d Cir.1989), cert. denied, 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991), and Roman v. Abrams, 822 F.2d 214, 227-28 (2d Cir.1987), cert. denied, 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). However, neither of those cases is valid authority for the proposition that Batson applies to the strikes of white veniremembers in general. In Government of the Virgin Islands v. Forte, a white male was charged with the rape of a black female. The Third Circuit Court of Appeals, recognizing that the defendant was a minority in the predominantly black Virgin Islands, held that he was entitled to raise a Batson challenge to the prosecutor's strikes of white veniremembers. 865 F.2d at 64.
The other case, Roman v. Abrams, actually involved a Sixth Amendment fair cross-section claim, but was decided, in part, on the basis of Batson prior to the United States Supreme Court's decision in Holland v. Illinois, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). In Holland, the Court held that the Sixth Amendment's fair cross section requirement does not prohibit "the exclusion of cognizable groups through peremptory challenges." 493 U.S. at 478, 110 S.Ct. at 806. That issue must be addressed "by the Fourteenth Amendment's prohibition of unequal treatment in general and racial discrimination in particular." 493 U.S. at 479, 110 S.Ct. at 806. Thus, the holding of Roman v. Abrams is questionable authority on this point.
Furthermore, none of the cases holding that Batson applies to strikes of white veniremembersForte, Roman, and State v. Knoxdiscussed the application of Castaneda v. Partida to the Batson requirement that the struck veniremember be a member of a cognizable racial group. Nor has the implication of the reference to Castaneda been addressed by the one justice on the United States Supreme Court and the one justice on the Alabama Supreme Court who have assumed that Batson applies to strikes of white veniremembers. See Edmonson v. Leesville *1044 Concrete Co., 500 U.S. at ___, 111 S.Ct. at 2095 (Scalia, J., dissenting) ("In criminal cases, [Batson] already prevents the prosecution from using race-based strikes. The effect of today's decision ([holding that Batson applies to strikes by litigants in a civil suit and] which logically must apply to criminal prosecutions) will be to prevent the defendant from doing soso that the minority defendant can no longer seek to prevent an all-white jury, or to seat as many jurors of his own race as possible. To be sure, it is ordinarily more difficult to prove race-based strikes of white jurors, but defense counsel can generally be relied upon to do what we say the Constitution requires. So in criminal cases, today's decision represents a net loss to the minority defendant.") (emphasis in original); Ex parte Huntley, 627 So.2d 1013, 1018 n. 7 (Ala.1992) (Maddox, J., concurring specially) ("[b]ecause the Batson rule now applies to a criminal defendant's peremptory challenges, if this defendant again uses all of his peremptory challenges to remove whites, then his strikes can also be challenged").
Although the term "minority" was not used in Batson, a careful reading of that decision reveals that it was designed in part to put an end to overt discrimination against minorities and other disadvantaged groups who have historically been denied the opportunity to serve as jurors first by statute, see, e.g., Strauder v. West Virginia, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880) (striking down a statute providing that only white males might serve as jurors), and then through the use of peremptory challenges. Contrary to the belief of the Louisiana Supreme Court, see State v. Knox, 609 So.2d at 806, nothing in the recent opinions indicates that the Supreme Court intends Batson to be applied to strikes of white veniremembers in general.
While Batson may be applicable to strikes of white veniremembers in jurisdictions where whites are in the minority, see Government of the Virgin Islands v. Forte, 865 F.2d at 64, or to strikes of white veniremembers who are also members of a cognizable ethnic group, see United States v. Bucci, 839 F.2d at 833, United States v. Biaggi, 673 F.Supp. 96, 99-100 (E.D.N.Y.1987), affirmed, 853 F.2d 89 (2d Cir.1988), cert. denied, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989),[6] neither of those circumstances are involved in the present case. The defendant was tried in Mobile County, which is predominantly white. See U.S. Dep't of Commerce, 1990 Census of Population, General Population Characteristics, Alabama, Table 76 at 336 (May 1992). Although the record does not reveal either the specific racial composition of the venire or that of the jury ultimately selected, the trial court noted, in denying the appellant's Batson motion, "that there weren't but five jurorsfive black jurors on the panel anyway." R. 7. Thus, it is clear that the venire was predominantly white. In fact, assuming that the appellant had as many strikes as the prosecutor, see Rule *1045 18.4(f)(1), A.R.Crim.P., and Ala.Code 1975, § 12-16-100(a), it is entirely possible that he was tried before an all-white jury.[7] The appellant merely asserted that the veniremembers struck by the State were "white." He made no attempt to show that any of these veniremembers State were members of a cognizable ethnic group. Under these circumstances, Batson clearly does not apply to the State's strikes of the white veniremembers.
For the reasons stated above, I disagree with the majority's conclusion that Batson applies to the strikes of white veniremembers in all cases.

II.
However, since the majority has reached the conclusion that Batson does apply to the strikes of white veniremembers, it should reverse the appellant's conviction because the prosecutor failed to provide race-neutral reasons for at least two of her strikes of the white veniremembers.
Within the context of Batson, a "race-neutral" explanation "means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (emphasis added). "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." Id.
Only one of the prosecutor's eight explanations was clearly race neutral and that was her explanation that she struck Number 1 because she "sat on a jury in a rape case where the defendant was found not guilty." R. 5. E.g., Childers v. State, 607 So.2d 350, 352-53 (Ala.Cr.App.1992); Whittlesey v. State, 586 So.2d 31, 32 (Ala.Cr.App.1991).
The prosecutor stated that she struck Number 13 because "[s]he said her husband was a minister" and because "[d]uring the voir dire, [she was] very quiet. She looked away. She looked to the people sitting next to her, B.H. and M.S. When we asked questions she just didn't appear to be with us." R. 5. The prosecutor's explanation for her strike of Number 13 would be acceptable under the strict language of Hernandez. However, Hernandez must be read in conjunction with Batson's clear holding that the challenged party "has the burden of articulating a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory. Batson, 476 U.S. at 97, 106 S.Ct. at 1723." Ex parte Branch, 526 So.2d 609, 623 (Ala.1987) (emphasis in original). Thus, to be considered facially valid under Hernandez, the explanation must meet the requirements stated in Batson, particularly that the "explanation [be] related to the particular case to be tried." 476 U.S. at 98, 106 S.Ct. at 1724 (emphasis added). It is apparently under this requirement that the Alabama Supreme Court has developed a strict scrutiny test for certain "group biases," including age, area of residence, and occupation. See generally Ex parte Bird, 594 So.2d 676, 682-83, 684-85 (Ala.1991).
"The fact that a veniremember is a minister or a minister's wife may be a valid race-neutral reason for striking that veniremember." Hart v. State, 612 So.2d 520, 524 (Ala.Cr.App.) (emphasis added), affirmed, 612 So.2d 536 (Ala.1992). However, to be facially valid this reason must be accompanied by a demonstration of its applicability to the case being tried. Cf. Huntley v. State, 627 So.2d 1011, 1012 (Ala.Cr.App.1991) (strikes of veniremembers who were a church administrator and an occupational therapist on ground that they "might make a decision *1046 based on sympathy" not sufficient where "prosecutor did not give any reason for her belief that a person employed as a caregiver or involved in religious work would be biased against the State in any way"), affirmed, 627 So.2d 1013 (Ala.1992). The bare assertion that the veniremember is a minister's wife is insufficient. See Walker v. State, 611 So.2d 1133, 1140 (Ala.Cr.App.1992), and cases cited therein.
In this case, the prosecutor merely asserted that the veniremember was struck because she was a minister's wife without demonstrating how that fact related to the instant case. The voir dire of the venire is not contained in the record. Normally, the burden is on the appellant to place before this Court a complete and accurate record. See Welch v. State, 455 So.2d 299 (Ala.Cr.App. 1984); Weaver v. State, 401 So.2d 344 (Ala. Cr.App.1981). In this particular situation, however, the State voluntarily assumed the burden of coming forward with legitimate, race neutral reasons for its strikes.[8] If the voir dire of the venire would have supported the State's argument that it had met its burden with regard to Number 13, then the State should have supplemented the record with the transcript of the voir dire. See Rule 10(f), A.R.App.P.
The prosecutor offered two reasons for her strike of Number 13. While the majority characterizes the second reason as "inattentiveness," and therefore race-neutral, the second reason actually falls within the "`body language' rationale" questioned by the Alabama Supreme Court in Ex parte Bird, 594 So.2d at 685, and the "demeanor" and "negative attitude" categories questioned by this Court in Avery v. State, 545 So.2d 123, 127 (Ala.Cr.App.1988).[9] These types of explanations are "especially subject to abuse because of their insusceptibility to an objective evaluation by the trial judge." Ex parte Bird, 594 So.2d at 685. Further, the prosecutor offered this type of reason as part of her explanation for three other strikes (Numbers 22, 29, and 30), which substantially undercuts the credibility of this reason. See Avery v. State, 545 So.2d at 127. Consequently, both reasons offered for the strike of Number 13 should be deemed insufficient.
With regard to Number 15, the prosecutor stated "I have got a note; but I didn't finish the note. I said `talked.' So, she must have said something to the questions as to did she know any of the people involved in the case." R. 6. When the trial court commented, "No, I don't think so," the prosecutor continued: "Not officers, but did she know any of the witnesses or anything. I put `talked to somebody.' I don't have who she talked to. Maybe she talked to some jurors." Id. (Emphasis added.) This was the sum total of the discussion concerning the strike of Number 15. There is absolutely nothing in the record to support the majority's assertion that Number 15 was "talking during the voir dire."
The prosecutor's explanation for her strike of Number 15 fails the Batson requirement that the explanation be "clear, specific, and legitimate." The prosecutor's mere assertion *1047 that the veniremember "talked to somebody," coupled with the prosecutor's obvious inability to specify who that "somebody" was, when the alleged conversation occurred, or how the veniremember's talking to that person might relate to the case at hand, creates the inescapable impression that this explanation was merely a pretext. See Ex parte Branch, 526 So.2d at 624. The explanation simply is not facially valid and should not be deemed an acceptable reason for the strike of Number 15.
Because the prosecutor "fail[ed] to articulate a legitimate reason" for two of her strikes, the remainder of her explanations are subject "to greater scrutiny." Ex parte Bird, 594 So.2d at 683. "[E]ven explanations that would ordinarily pass muster become suspect where one or more of the explanations are particularly fanciful or whimsical." Id. While the prosecutor's explanations for her strikes of Numbers 12, 29, and 31 may, as the majority concludes, be sufficiently race-neutral, her explanations for her strikes of Numbers 22 and 30 are suspect when viewed with "greater scrutiny." The prosecutor gave the following reasons for her strikes of Numbers 22 and 30:
Number 22"She had thick glasses. During most of the questioning she had her hands on her face. She appeared to be bored. She said her son was involved in a shooting and she didn't want to discuss it. She looked away. She looked up at the ceiling. She looked down. She fidgeted in her seat." R. 4.
Number 30"He was the guy that spoke with a lisp. His brother was murdered out of town. Sam [defense counsel] asked him about giving the defendant a fair trial. I saw him look at the defendant. Gave him a funny look. He looked to the woman sitting next to him. He gave the defendant a really hard look. I didn't feel that he would be fair." R. 7.
Both of these explanations contain the disfavored "body language," "demeanor," and "negative attitude" rationales. As this Court noted in Avery v. State, 545 So.2d at 127, "[i]t seems unusual that four [(counting Numbers 13 and 29)] out of [nine] prospective jurors would exhibit the same negative-type behavior." However, other reasons were also provided for the strikes of Numbers 22 and 30. "[W]hen both a suspect reason and a valid reason have been given, the court may rely on the valid reason." Powell v. State, 608 So.2d 411, 414 (Ala.Cr.App.1992).
The prosecutor stated that Number 22's son was "involved in a shooting," and Number 30's brother was "murdered out of town." The fact that a veniremember or the veniremember's relative is connected with or suspected of "criminal activity can constitute a sufficiently race-neutral reason for the exercise of a peremptory strike." Heard v. State, 584 So.2d 556, 560 (Ala.Cr.App.1991). In this case, however, it is not clear that the veniremembers' relatives were connected with or suspected of criminal activity. In fact, Number 30's brother appears to have been the victim of criminal activity, which would, instead, seem to be a reason for the State not to strike Number 30. See Whitley v. State, 607 So.2d 354, 358 (Ala.Cr.App.1992) (in murder prosecution, prosecutor "cited the fact that juror 128 had a relative that had been murdered as the motivating reason why [the State] did not strike him from the jury"). The prosecutor's statement does not indicate whether Number 22's son was a perpetrator or a victim. Under the circumstances, these explanations are extremely weak.
In denying the appellant's Batson motion, the trial court noted that "a surprising number of these are unexplained. There are two for which no reason at all [sic], they are just body language." R. 7. He continued:
The problem is that there weren't but five jurorsfive black jurors on the panel anyway. She struck one of them. So, she struck 20 percent black, 20 percent of the blacks. If she really didn't have much reason, it looks to me like [the prosecutor] ran out of reasons to strike people and was just following vague hunches. If you don't have a real strong reason, I don't know why you shouldn't follow vague hunches. I can't really say with only four leftfour blacks left, she should have found a vague hunch against one of them instead of somebody else." R. 7-8.
The majority interprets these statements to mean that the trial court found "that the *1048 state's explanations, considering all the surrounding circumstances, were race neutral." The more accurate interpretation is that the trial court recognized that at least two of the State's reasons were totally deficient, but ruled that the appellant had not established a prima facie case of discrimination. The ruling with regard to the appellant's failure to establish a prima facie case came too late the prosecutor's reasons were on the record by that time. See Huntley v. State, 627 So.2d at 1015. As the trial court correctly observed, two of these reasons were insufficient. Having recognized both this and the fact that several of the prosecutor's explanations were only "vague hunches," the trial court should have granted the appellant's Batson motion and taken remedial action. The Alabama Supreme Court has made it clear that "unarticulated `gut feelings' about a veniremember will not rebut a Batson challenge" as "these `"seat-of-the-pants instincts" may often be just another term for racial prejudice.'" Ex parte Bird, 594 So.2d at 684. "Vague hunches" clearly belong in the same suspect category as "gut feelings" and simply cannot be considered a valid reason for exercising a peremptory challenge.
"The State's use of peremptory strikes to remove even one veniremember for a reason that is not race-neutral necessitates a reversal of the defendant's conviction." Jackson v. State, 594 So.2d 1289, 1294 (Ala.Cr.App. 1991). If the majority is going to apply Batson to the strikes of white veniremembers in general, it should also hold that the prosecutor failed to provide sufficient race-neutral reasons for its strikes and reverse the appellant's conviction. However, as stated in Part I of this dissent, the judgment of the circuit court should be affirmed because Batson does not apply to the prosecutor's peremptory strikes of white veniremembers.
NOTES
[1] My original dissent is hereby withdrawn and this dissent is substituted therefor.
[2] It is under this latter classification that I believe that Batson applies to strikes of female veniremembers. See Bankhead v. State 625 So.2d 1141, 1143 (Ala.Cr.App.1992) (Bowen, J., dissenting).
[3] The Alabama Supreme Court had reached this same conclusion two years earlier in Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala. 1989).
[4] This Court had reached that same conclusion some six months earlier in Lemley v. State, 599 So.2d 64 (Ala.Cr.App.1992).
[5] In State v. McCollum, 261 Ga. 473, 405 S.E.2d 688 (1992), the Georgia Supreme Court held that Batson did not apply to criminal defendant's use of peremptory strikes. The United States Supreme Court reversed and, as discussed above, held that Batson does apply to a defendant's use of his peremptory strikes. Georgia v. McCollum, ___ U.S. at ___, 112 S.Ct. at 2358. McCollum involved the strikes of black veniremembers by white defendants.
[6] In United States v. Bucci, the First Circuit Court of Appeals applied Castaneda v. Partida and Hernandez v. Texas in determining whether Italian-Americans were a cognizable ethnic group for Batson purposes. The court stated that, under Castaneda and Hernandez, "[t]he important consideration for equal protection purposes is not whether a number of people see themselves as forming a separate group, but whether others, by treating those people unequally, put them in a distinct group.... [T]he specific reference in Batson to Castaneda v. Partida, and the latter's reference to Hernandez v. Texas, indicates that the cognizability standard is further limited in this situation to those groups that have been discriminated against." Bucci, 839 F.2d at 833 & n. 11a. Accord United States v. Biaggi, 673 F.Supp. at 99-100. The Bucci defendants failed in their Batson claim because they "did not even attempt to show that Italian-Americans either have been or are currently subjected to discriminatory treatment." Bucci, 839 F.2d at 833. See also United States v. Di Pasquale, 864 F.2d 271, 277 (3d Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) (Italian-American defendant failed to show cognizability of his group); Murchu v. United States, 926 F.2d 50, 55 (1st Cir.) (in holding that defendant failed to establish a Batson claim, the court "note[d] the complete absence of any allegations or evidence that Americans of Irish ancestryeven if otherwise a cognizable groupwere being subject[ed] to unequal treatment by their fellow Americans at the time of Murphy's trial, and hence needed protection from community prejudices"), cert. denied, ___ U.S. ___, 112 S.Ct. 99, 116 L.Ed.2d 70 (1991). In contrast, the Biaggi court found that Italian-Americans were a cognizable ethnic group, "tak[ing] judicial notice that Italians have been subject to stereotyping, invidious ethnic humor and discrimination." Biaggi, 673 F.Supp. at 100-01.
[7] Both Rule 18.4(f)(1) and § 12-16-100(a) provide in pertinent part that the prosecutor shall have the first strike of one juror, then the defendant shall strike one juror, and the prosecutor and defendant "shall continue to strike off names alternately until only 12 jurors remain." Under this rule and section, it is conceivable that the appellant had only eight strikes instead of nine. However, that is still a sufficient number of strikes for the appellant to have removed the remaining four black veniremembers.
[8] Under Batson, Ex parte Branch, and their progeny, a defendant asserting a Batson challenge bears the initial burden of establishing a prima facie case of discrimination on the part of the prosecution. Until the defendant meets this burden, the prosecution is "under no obligation to offer explanations for its peremptory strikes." Jackson v. State, 594 So.2d 1289, 1292 (Ala.Cr. App.1991). In this case, the appellant totally failed to meet his burden of establishing a prima facie case of discrimination. However, the trial court did not rule on this matter before directing the State to explain its strikes and the State provided the explanations without requesting a ruling on this matter or otherwise objecting. Compare Insley v. State, 600 So.2d 448, 448-49 (Ala.Cr.App.1992) (where trial court found that defendant had not established a prima facie case of discrimination, but, "in `an abundance of caution,'" requested prosecutor to provide explanations for his strikes, prosecutor properly objected and "respectfully decline[d] to give [his] reasons on the record"). When the explanations for the challenged strikes are contained in the record, this Court must review those explanations, regardless of whether the challenging party established a prima facie case of discrimination. See Huntley v. State, 627 So.2d 1013, 1015 (Ala. 1992); Jackson v. State, 594 So.2d 1289, 1293 (Ala.Cr.App.1991).
[9] While the Alabama Supreme Court indicated in Harrell v. State, 555 So.2d 263, 268 n. 1 (Ala. 1989), that "body english" and "demeanor" may be sufficient reasons for striking a veniremember, it is clear from the later opinion in Ex parte Bird that these reasons are not favored.