Argued and submitted August 24, 1990, reversed and remanded for new trial
April 22, reconsideration denied July 1, petition for review allowed August 25, 1992
(314 Or 175)

STATE OF OREGON,
*Respondent,*

*v.*

RODDY DEAN HENDERSON,
*Appellant.*

(87-0074; CA A60607)

829 P2d 1025

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This case is before us a second time. Defendant, a black man, was convicted of raping, ORS 163.375, and kidnapping, ORS 163.235, a white woman. During *voir dire*, the prosecutor exercised a peremptory challenge, thereby excusing DuBoise, the only black venireman. Defendant's attorney objected and requested that a neutral reason be given. The trial court accepted the challenge as made, resulting in an all white jury. Defendant was convicted. On the first appeal, 94 Or App 87, 764 P2d 602, we held that defendant had made a *prima facie* showing under *Batson v. Kentucky*, 476 US 79, 96-97, 106 S Ct 1712, 90 L Ed 2d 69 (1986), of purposeful discrimination and remanded the case to the trial court "to determine whether the prosecution had a neutral explanation related to this case, consistent with *Batson*, for excusing the juror." 94 Or App at 93. On remand, the trial court conducted a hearing, almost two years after the event, and accepted the Deputy District Attorney's statements relating to his challenge, from which it concluded that "a neutral explanation has been provided." The judgment of conviction was reinstated. This appeal followed.

■      The neutral explanation required to rebut an inference of discrimination transforms what would otherwise be a peremptory challenge, for which no explanation need be given, into something between a peremptory challenge and a challenge for cause. Although the explanation need not rise to the level of cause, a prosecutor's general assertion that merely denies a discriminatory motive or affirms his good faith will not suffice. *Batson v. Kentucky, supra,* 476 US at 97. A prosecutor may not assume that a juror will be partial to the defendant solely because the two are of the same race.[1]

---

[1] After *Batson* was decided, the United States Supreme Court decided *Powers v. Ohio,* ___ US ___, 111 S Ct 1364, 113 L Ed 2d 411 (1991), and *Edmonson v. Leesville Concrete Co., Inc.,* ___ US ___, 111 S Ct 2077, 114 L Ed 2d 660 (1991). Although the later cases are not directly relevant to this case, they indicate clearly that the Court, rather than limiting *Batson*, is extending it to the point where peremptory challenges might be a thing of the past in all cases in which a juror who is a member of a minority group is challenged without cause. In *Powers*, a white defendant convicted of 2 murders was entitled to make a *Batson* challenge to the prosecutor's peremptory challenge of a black juror. In *Edmonson*, the Court extended *Batson* to civil cases, holding that race-based exclusion violates the equal protection rights of the challenged jurors, which may be asserted by a litigant. The New York Court of Appeals, given its experience since *Batson*, has suggested the

Rather, he "must articulate a *neutral explanation related to the particular case to be tried.*" *Batson v. Kentucky, supra,* 476 US at 98. (Emphasis supplied.)

On remand, the deputy district attorney, by way of argument, not by testimony, explained his reasons for the challenge. They are set out in full in the margin.[2] After

elimination of peremptory challenges. *People v. Bolling,* 79 NY 317, 591 NE2d 1136 (1992).

[2]
"[Prosecutor]: The reason for bouncing the juror and exercising my peremptory challenge, Your Honor, is that I had a bad sort of personal sense about the juror. His demeanor was a little stiff, kind of a military sort of bearing, not particularly communicative, didn't seem to me, and, perhaps, also not a real good mixer — wasn't going to get along with the panel as a whole. I had the feeling about him — just the feeling that he didn't particularly want to be there.

"Secondly, that was kind of reinforced because in our office we keep track of previous juries for each particular term, and I had them with me at the time of the Henderson case, and he was one of two jurors that I chose to exercise a peremptory on, at lease in part, based upon what they had done in previous trials.

"That juror was called in three trials during the panel. On the first one, Henry Loebe from our office tried it, and the juror was challenged by Wayne Rapp for the defense, and the comment by the deputy from our office was: 'I might have bumped him, as well.'

"He sat, second, on the fifth or sixth jury trial of the term, a case that Rob Bletko from our office tried, and he also challenged him, and his comment was: 'He had problems with circumstantial evidence,' or at least that's the feeling that he got from the juror.

"The third time he sat was a D.U.I.I. case. Bob Bianchi from our office tried the case, left him on the case, but he made a specific note next to him on the result sheet that he didn't really like him, 'seems aggressive towards the State,' and with that combination of things, I meant by challenging to exclude him from the jury without even questioning him based upon the record.

"I also did the same thing with another lady, * * * who was a juror during that panel, also, when she was challenged —

"THE COURT: On Mr. Henderson's case?

"[Prosecutor]: Right, and I challenged her for basically the same reasons. She had appeared in six other criminal trials and had been challenged in each case, once by — or five, I guess — once by the defense and four times by the State, and with that kind of a track record, I excluded her for primarily the same reasons, and it's reflected in the sheet that I filled out, not the Friday of the result, but the following week when I listed the result and listed my comments of the jurors in this case.

"* * * * *

"THE COURT: [Prosecutor], anything further?

"[Prosecutor]: Nothing in addition, Your Honor. I do want to make one comment. There was a reference in the appellate opinion that nothing appeared

stating his personal, subjective reactions to the juror, he stated that he really based his challenge on what other deputy district attorneys had done in previous trials with respect to jurors called during the same term. He explained that his office keeps records of juries for each term and that he had them with him when selecting the jury in this case. The first time that DuBoise had been called in another case, defense counsel had excused him, and the prosecutor had noted: "Black. Liked my cir[cumstantial] evid[ence] example. Seemed intelligent." Although those comments suggest that DuBoise would have been a good juror for the prosecution, the prosecutor added: "I might have bumped." He did not say why. The second time that he had been called, DuBoise was challenged by the prosecutor, who noted that he had problems with circumstantial evidence, which appears to be inconsistent with the comment in the earlier case. The third time, although DuBoise was not challenged, the prosecutor noted: "Young black machinist; didn't really like him; seems aggressive toward state." DuBoise voted for conviction in that case.

Those records, which had been updated after the trial in this case, were admitted in evidence on remand. They show that the deputy district attorney who presented this case noted his challenge to DuBoise, with only one comment: "See previous trials." In at least two of those, the prosecutors had made specific notes that DuBoise was black. If he had been challenged, even in part, for that reason, reliance on that history does not present a racially neutral reason. In the only criminal case on which DuBoise sat, which was after he had been challenged by the prosecutor in an earlier trial, he voted for conviction.

■ The state argues that the deputy district attorney stated that he had also challenged a white female prospective juror in this case for the same reason: that is, because other attorneys in his office had challenged her in previous cases. The record shows that she had been called 6 times during that jury term and had been challenged 5 times by the prosecution

---

in particular about the questioning of this individual juror. I made up my mind to challenge him prior to asking him anything based upon what I knew from the previous juror sheets and the state of the case and that I had four remaining challenges. The only reason I asked him any questions at all is to make it not appear obvious that he was going to be challenged. It was nothing whatsoever to do with the content of what he might have said."

and once by the defense. In 4 of those cases, the prosecutor explained that he did not like her or did not trust her. The state argues that the prosecution's motives were not discriminatory if a white panelist sharing the same characteristics as a black was also challenged. That argument seems to be that, because other prosecutors had had a bad feeling or a subjectively adverse reaction to a white juror whom they had challenged, the prosecutor was free to challenge a black juror in this case because other prosecutors had also challenged that juror, noting that he was black. Even if it can be said that the previous challenges were racially neutral, the reason for the challenge in this case had to be, not only neutral, but "related to the particular case to be tried," not to some other case. If the prosecutor does that, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson v. Kentucky, supra,* 476 US at 97.

■    Given the prosecutor's explicit statement that he had intended to challenge DuBoise before he asked any questions and that he had asked questions only to "make it not appear obvious that he was going to be challenged," it is clear that his reason for challenging DuBoise was not related to *this* case and that the other stated reasons based on his *voir dire*[3] of DuBoise had no bearing on the challenge.

---

[3] This is the *voir dire* in its entirety:

By [Defense Counsel]:

"Q  Hello. I can't pronounce your last name. Could you do it for me?

"[ANDERSON DUBOISE:] A Duboise.

"Q  Mr. Duboise, can you be completely objective and honest in this case?

"A  I think so.

"Q  Can you listen to the facts only and make a determination strictly based upon the facts?

"A  Yes.

"[Defense Counsel]: Thank you. I have no more questions. I pass for cause.

"Q  [By Prosecutor]: Mr. Duboise, does a woman have to fight or be injured in order to be the victim of a rape?

"A  No.

"Q  If the Court were to instruct you that just the threat is enough to be forcible compulsion under some circumstances, could you follow that kind of instruction?

"A  Yes.

"Q  It indicates on the jury questionnaire that you or a member of your family on one occasion were the victim of a crime. What was that about?

The burden was on the state on remand to overcome the inference that the reasons for challenging DuBoise were racially motivated and to show that the reasons for the challenge were related to this case. The state failed to sustain its burden.

Reversed and remanded for a new trial.

---

"A  Well, once I thought about it and realized what you wanted, it was a cousin that had been assaulted down in California. I don't know enough about it to speak any more about it.

"Q  So it's nothing that really causes you much concern one way or the other about the legal system or how it works?

"A  They asked if I knew about it, but it had no bearing on it.

"Q  How do you feel about the use of alcohol?

"A  It's—

"Q  Any strong feelings about it one way or another?

"A  No.

"Q  What about the use of alcohol as an excuse for behavior that's otherwise criminal?

"A  I agree with most of the other jurors. I have been able to hear from the back there. It's no excuse.

"Q  If the Court were to instruct you that if you intend to cause—if you intend to rape someone, that's equal to or the same as intending to cause them physical injury, could you follow that instruction?

"A  If instructed by the Court, yes.

"[Prosecutor]:  I have no questions in addition, Your Honor. We will pass the juror for cause."