Argued and submitted November 3, decision of Court of Appeals reversed; judgment of the circuit court affirmed December 10, 1992

STATE OF OREGON,
*Petitioner on Review,*

*v.*

RODDY DEAN HENDERSON,
*Respondent on Review.*

(CC 87-0074; CA A60607; SC S39342)

843 P2d 859

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for respondent on review. With her on the response was Sally L. Avera, Public Defender, Salem.

GRABER, J.

## GRABER, J.

The issue in this criminal case is whether the prosecutor's peremptory challenge of a prospective juror who is a member of a racial minority violated defendant's rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.[1] We hold that defendant did not demonstrate a violation of his Fourteenth Amendment right to equal protection of the laws.

Defendant, an African-American man, was convicted of raping and kidnapping a Caucasian woman. During selection of the jury, the prosecutor exercised a peremptory challenge to excuse DuBoise, the only African-American prospective juror. Apparently relying on *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986), defendant objected to the challenge,[2] but the trial court overruled the objection. On appeal, the Court of Appeals, applying *Batson*, held that defendant had made a *prima facie* showing of purposeful discrimination and remanded the case to the trial court to determine whether the prosecutor had a "neutral explanation related to this case, consistent with *Batson*," for challenging prospective juror DuBoise. *State v. Henderson*, 94 Or App 87, 764 P2d 602 (1988).

On remand, the trial court concluded that the prosecutor's explanation for the challenge was race-neutral. Defendant again appealed. On the second appeal, the Court of Appeals held that the state had failed to carry its burden to show that the reasons for the challenge were not racially motivated and to show that those reasons were "related to this case." *State v. Henderson*, 112 Or App 451, 829 P2d 1025 (1992). The Court of Appeals reversed defendant's conviction and remanded the case to the circuit court for a new trial. The state petitioned this court for review, and we allowed the petition. We reverse the decision of the Court of Appeals.

---

[1] The Fourteenth Amendment provides in part:

"No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Defendant raises no state law claim, and we decide this case entirely under federal law.

[2] In making his objection, defense counsel referred to "a decision on peremptory challenges" handed down "a few months ago" by the Supreme Court of the United States.

In *Batson v. Kentucky, supra*, the Supreme Court of the United States held that the Equal Protection Clause of the Fourteenth Amendment forbids prosecutors from challenging prospective jurors solely on account of their race or on the assumption that a minority juror will be unable impartially to consider the state's case against a minority defendant. The *Batson* court established a three-part test for determining whether a peremptory challenge of a prospective juror violates a defendant's rights under the Equal Protection Clause.

In the first step, the defendant must establish a *prima facie* case of purposeful discrimination by the state in the selection of the jury. The defendant may do so by showing that he or she is a member of a cognizable racial group and that the prosecutor has exercised a peremptory challenge to remove from the jury panel a member of the defendant's race. The defendant must then show that the facts and other relevant circumstances of the jury selection process raise an inference that the prosecutor exercised the peremptory challenge for the purpose of excluding a member of the defendant's race. *Batson v. Kentucky, supra*, 476 US at 96. Relevant circumstances that support that inference include, but are not limited to, a "pattern" of strikes against prospective jurors of the defendant's race and the nature of the questions and statements made by the prosecutor during *voir dire. Id.* at 96-97.

In step two, once the defendant has established a *prima facie* case of purposeful discrimination, the burden shifts to the state to articulate a neutral explanation for the peremptory challenge. The prosecutor's explanation "need not rise to the level justifying exercise of a challenge for cause." *Id.* at 97. As noted above, however, a mere assumption by the prosecutor that the challenged juror might be biased in favor of the defendant because of their shared race is not sufficient to rebut the defendant's *prima facie* case. Nor may the prosecutor rebut the defendant's case merely by denying the existence of a discriminatory motive or by affirming his or her good faith in selecting the jury. *Id.* at 97-98. The explanation must be "related to the particular case to be tried," *id.* at 98, and must be "clear and reasonably specific," *id.* at 98 n 20.

In the third and final step, the trial court must determine as a matter of fact whether the defendant has carried the burden of establishing purposeful discrimination. *Id.* at 98. *See also Hernandez v. New York*, 500 US____, 111 S Ct 1859, 1866-73, 114 L Ed 2d 395 (1991) (restating and applying the three-part test).

We apply the *Batson* test to the case at bar. In doing so, we need consider only the two issues raised on the second appeal: whether, on remand, the prosecutor's proffered explanation for the peremptory challenge of DuBoise was legally sufficient to rebut defendant's *prima facie* case; and, if it was, whether the trial court then found as a matter of fact that the challenge did not constitute purposeful discrimination.[3]

We turn first to the issue whether the prosecutor's explanation was race-neutral. In the rehearing after remand, the prosecutor gave the following explanation for his challenge of prospective juror DuBoise:

> "[PROSECUTOR]: The reason for bouncing the juror and exercising my peremptory challenge, Your Honor, is that I had a bad sort of personal sense about the juror. His demeanor was a little stiff, kind of a military sort of bearing, not particularly communicative, didn't seem to me, and, perhaps, also not a real good mixer — wasn't going to get along with the panel as a whole. I had the feeling about him — just the feeling that he didn't particularly want to be there.
>
> "Secondly, that was kind of reinforced because in our office we keep track of previous juries for each particular term, and I had them with me at the time of the Henderson case, and he was one of two jurors that I chose to exercise a peremptory on, at least in part, based on what they had done in previous trials.

---

[3] The state also argues here that defendant did not establish a *prima facie* case of purposeful discrimination at the first step. Because the state did not seek review of the Court of Appeals' remand of the case to the trial court for an explanation of the state's challenge, *State v. Henderson*, 94 Or App 87, 764 P2d 602 (1988), we do not consider that argument. *See Hernandez v. New York*, 500 US____, 111 S Ct 1859, 1862, 114 L Ed 2d 395 (1991) (after prosecutor offered explanation for challenges and trial court ruled on the question of intentional discrimination, preliminary issue whether the defendant made a *prima facie* showing of discrimination was moot).

"[DuBoise] was called in three trials during the panel. On the first one, [a prosecutor] from our office tried it, and the juror was challenged by [defense counsel], and the comment by the deputy from our office was: 'I might have bumped him, as well.'

"He sat, second, on the fifth or sixth jury trial of the term, a case that [a prosecutor] from our office tried, and he also challenged him, and his comment was: 'He had problems with circumstantial evidence,' or at least that's the feeling that he got from the juror.

"The third time he sat was a D.U.I.I. case. [A prosecutor] from our office tried the case, left him on the case, but he made a specific note next to him on the result sheet that he didn't really like him, 'Seems aggressive towards the State,' and with that combination of things, I meant by challenging to exclude him from the jury without even questioning him based upon the record.

"I also did the same thing with another lady * * * who was a juror during that panel, also, when she was challenged —

"[THE COURT]:   On Mr. Henderson's case?

"[PROSECUTOR]:   Right, and I challenged her for basically the same reasons. She had appeared in six other criminal trials and had been challenged in each case, once by — or five, I guess — once by the defense and four times by the State, and with that kind of a track record, I excluded her for primarily the same reasons, and it's reflected in the sheet that I filled out, not the Friday of the result, but the following week when I listed the result and listed my comments of the jurors in this case.

"* * * * *

"[PROSECUTOR]:   * * *

"State's Exhibit No. 2 are the individual juror report forms that are filled out by deputies in our office every time a case is tried in front of a jury, and I have tried to highlight in yellow each of the occasions when either of those two jurors appeared, along with the names, numbers, and the comments of the individual who was trying the case for the State, and it reflects whether or not they actually sat on the jury, and, if they were challenged, why they were challenged, and any reason they might have offered and who challenged them.

"[THE COURT]:   And these documents are documents that are internally in the District Attorney's office[] here?

"[PROSECUTOR]: That's correct.

"[THE COURT]: Then shared by other members of the District Attorney's staff?

"[PROSECUTOR]: By other members in the office.

"* * * * *

"[PROSECUTOR]: Nothing in addition, Your Honor. I do want to make one comment. There was a reference in the appellate opinion that nothing appeared in particular about the questioning of this individual juror.[4] I made up my mind to challenge him prior to asking him anything based upon what I knew from the previous juror sheets and the state of the case and that I had four remaining challenges. The only reason I asked him anything at all is to make it not appear obvious that he was going to be challenged. It was nothing whatsoever to do with the content of what he might have said.

"* * * * *

"[PROSECUTOR]: * * * Had I chosen not to exercise a peremptory challenge and not backed my judgment on that particular juror, the only reason for not having done so would have been for a race-free reason. I would not have done so simply because he was black.

"My judgment told me that's what I should do based upon how he behaved and based upon his prior track record as serving as a juror."

■  In summary, the prosecutor relied on two factors for his challenge of prospective juror DuBoise. First, the prosecutor relied on DuBoise's demeanor during the jury selection process. A prospective juror's demeanor is a legitimate and reasonable race-neutral basis for a prosecutor's decision to challenge that juror. *See, e.g., U.S. v. Power*, 881 F2d 733, 740 (9th Cir 1989) (prosecutor's explanation that she challenged a juror because he was "fidgeting and looking around" expressed a "neutral, reasonable basis" for the challenge); *U.S. v. Moreno*, 878 F2d 817, 820-21 (5th Cir 1989) (not error for trial court to accept prosecutor's explanation that he struck a juror because he "detected a hostile attitude toward police officers"); *United States v. Mathews*, 803 F2d 325,

---

[4] During *voir dire*, the prosecutor questioned DuBoise briefly about his view of what constituted rape; about his opinion of the use of alcohol during the commission of a crime; and about the extent of his experience as the victim of a crime.

330-31 (7th Cir 1986) (prosecutor's explanation that he struck a juror because she "did not seem to be attentive" was sufficient; "posture and demeanor" and other "subjective" factors may be part of "the type of explanation that satisfies Batson's requirements").[5]

██ As a second reason for challenging the prospective juror, the prosecutor cited reports from other staff members in the District Attorney's office that DuBoise "had problems with circumstantial evidence" and that he seemed "aggressive" toward the state. That information about DuBoise's service in other trials was race-neutral.[6] In addition, the information was "related" to the juror's suitability for service in "the particular case," as required by Batson, supra, 476 US at 98. Details of a prospective juror's prior jury experience — like details of a prospective juror's other life experiences — may permit a prosecutor reasonably, and race-neutrally, to draw inferences about the prospective juror's current biases. See U.S. v. Powers, supra, 881 F2d at 740 (not error for trial court to accept prosecutor's explanation that she challenged a juror because she feared that the juror's recent service in long trial would make the juror hostile to the government).

██ We conclude that the explanation given by the prosecutor was race-neutral. We next turn to the issue whether the trial court found as a matter of fact that defendant failed to carry his burden of showing purposeful discrimination. See Hernandez v. New York, supra, 111 S Ct at 1168-69

---

[5] The Court of Appeals rejected the prosecutor's reliance on DuBoise's demeanor because of the prosecutor's statement that he had decided to exercise a peremptory challenge before questioning DuBoise. State v. Henderson, supra, 112 Or App at 456. However, a prosecutor may rely on observations of a prospective juror's demeanor during the selection of other jurors and during questioning of that prospective juror by defense counsel, as well as on observations made during the prosecutor's own questioning of the prospective juror.

In addition, we note that the inquiry at step two in the Batson analysis is an inquiry about a matter of law, not about a matter of fact: whether the type of explanation given is race-neutral. Reliance on a prospective juror's demeanor is a race-neutral type of explanation.

[6] The fact that the prosecutor also challenged a non-minority prospective juror on this same basis lends additional credibility to the explanation. Cf. U.S. v. Chinchilla, 874 F2d 695, 698-99 (9th Cir 1989) (prosecutor's explanation that he struck prospective juror because of place of residency was insufficient where another, unchallenged juror lived in same area).

(describing third step of analysis). If it did, we review the trial court's finding for "clear error." *Id.* at 1163.[7]

Defendant argues that "the trial court made no finding, express or implied, about what the prosecutor relied on in making his challenges. Rather, the trial court only made a legal conclusion about proffered reasons." In other words, according to defendant, the trial court never reached the third step of the *Batson* analysis. We do not read the trial court's ruling as defendant does. At the conclusion of the hearing, the court stated:

> *"The Court, as I understand it in this case, is really called upon to make a factual determination* from the comments of counsel and the evidence that's been presented as to whether or not there has *truly* been a neutral explanation provided by the prosecution for excusing a particular juror in this case. Those are the instructions that the Court of Appeals gives me on this remand, and the Court of Appeals says that if a neutral explanation has been provided to the satisfaction of the trial court, then the conviction is to be reinstated. Otherwise, the trial court is to grant a new trial.

> "Clearly, from the information provided by [the prosecutor] and from the exhibits that have been referred to and received in this matter, *the Court is satisfied* that a neutral explanation has been provided, and, accordingly, the Court has no choice except to reinstate the conviction of Mr. Henderson in this matter. That's the Court's ruling * * *." (Emphasis added.)

From those statements, we conclude that the trial court made a factual finding that defendant failed to carry his burden of showing purposeful discrimination. We discern no clear error in the trial court's finding. Therefore, defendant has not established that the prosecutor's peremptory challenge of prospective juror DuBoise violated defendant's rights

---

[7] In *Hernandez v. New York, supra* note 3, 111 S Ct at 1869, the Supreme Court of the United States explained:

"Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding will 'largely turn on the evaluation of credibility.' In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." (Citation omitted.)

under the Fourteenth Amendment to the Constitution of the United States.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.