Argued and submitted April 5, affirmed December 8, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN NATHANIEL MILLAGE,
*Appellant.*

## (448615-9107; CA A74055)

864 P2d 868

Garrett A. Richardson argued the cause and filed the brief for appellant.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant was convicted of disorderly conduct and assault in the fourth degree. ORS 166.025; ORS 163.160. He argues that the trial court erred in finding that the prosecutor's peremptory challenge of a prospective juror, who is a member of a racial minority, did not violate his Fourteenth Amendment right to equal protection of the laws.[1] We affirm.

On July 3, 1991, defendant, an African-American man, and McIntosh,[2] also an African-American man, entered an Arctic Circle restaurant and ordered food. According to several witnesses, defendant and McIntosh verbally abused the employees. About 20 minutes after leaving the restaurant, they returned, complained about their order and continued to harass the employees. An employee retreated to the manager's office and called the restaurant manager, Clark, also an African-American man. After Clark arrived, he asked defendant and McIntosh to leave the restaurant, but they refused. The police were called. However, before they arrived, a fight ensued between Clark, defendant, and McIntosh. Clark testified that one of the two defendants shoved him and the other one punched him in the mouth. Clark asked an employee to give him something he could use to defend himself. Clark was given a wooden stick, which he used to strike defendant and McIntosh. When the police arrived, all three men were bleeding.

Defendant and McIntosh were tried together. Counsel conducted *voir dire* of a panel of twelve prospective jurors, including two African-Americans. One prospective juror was discharged for cause and then a panel of six was chosen. Defense counsel exercised two peremptory challenges. Prospective juror Williams, an African-American woman, replaced one of the prospective jurors challenged by the defense. The prosecutor then exercised his first and only

---

[1] The Fourteenth Amendment provides, in part:

"No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Defendant does not make a separate claim under the Oregon Constitution. Accordingly, we decide this case entirely under federal law.

[2] Defendant and McIntosh were co-defendants at trial. McIntosh raises the same issue on appeal. *See State v. McIntosh*, 125 Or App 272, 864 P2d 871 (1993).

peremptory challenge to excuse Williams. Defense counsel objected, relying on *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986). The trial court upheld the prosecutor's challenge.

The Equal Protection Clause of the Fourteenth Amendment forbids prosecutors from challenging prospective jurors solely on the basis of their race. *Hernandez v. New York*, 500 US 352, 111 S Ct 1859, 114 L Ed 2d 395 (1991). In *Hernandez*, the Court reaffirmed *Batson's* three-part test for determining whether a prosecutor's peremptory challenge of a prospective juror violated the Fourteenth Amendment:

> "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." 500 US at 358. (Citations omitted.)

Here, we need not decide whether defendant established a *prima facie* case of purposeful discrimination in the jury selection process, because, in response to defendant's objection, the state offered several reasons for its peremptory challenge to Williams. Therefore, the issue of whether defendant established a *prima facie* case is moot. *Hernandez v. New York, supra,* 500 US at 359. The issues here are whether the prosecutor articulated a race-neutral reason for challenging Williams and whether the trial court's finding that defendant failed to carry his burden of showing purposeful discrimination was clearly erroneous. *Hernandez v. New York, supra.*

The state offered the following reasons for challenging Williams:

> "[PROSECUTOR]: We discussed this in chambers and said we'd put this on the record, that I would have bumped her whether she was white, black or any other color. Her answers to the questions basically that she's unemployed and lives with somebody who is unemployed, generally I would bump anybody like that. The state generally wants the solid working citizens, and that's nothing against the unemployed, but that's what we look for in a jury. Then * * * she very much jumped on * * * the defense proposition that somebody who is convicted of a felony should be judged

separately, and that is an accurate statement of the law but she is more than eager to do that, which raised my eyebrows. She also agreed with [defense counsel] quite adamantly that the customer is always right, and, since that's going to be an issue here and we're going to be showing that the customer always isn't right, that was another indication that I didn't want her on the * * * jury, and, finally, [another juror], who was sitting next to her, once an open seat moved up, [that juror] moved away, and that just made me note that maybe there [were] some noncohesive elements, we'd like a jury * * * that gets along, and that was just something I noted. But none of those are dispositive, but all of them together makes it, made Miss Williams a horrible state juror. And, finally, I do notice, the court has noted, the defendants in this case are black, the victim in this case is black, and it's really not a racial type case. At least I don't see it that way."

The prosecutor's proffered reasons for challenging Williams included: (1) she was unemployed; (2) she was "eager" to agree with defense counsel that a prior felony conviction is not evidence of defendant's guilt; (3) she "quite adamantly" agreed with the maxim that "the customer is always right;" and (4) the panel appeared to have noncohesive elements.

■     Defendant argues that the prosecutor's proffered reasons are mere pretext for purposeful discrimination. According to defendant, statistics show that a higher percentage of African-Americans are unemployed than Caucasians, and, therefore, the prosecutor's first stated reason is not a race-neutral basis for challenging Williams. Assuming that defendant's statistics are correct, and even applicable, we nonetheless disagree with his assertion that the prosecutor's proffered reason for challenging Williams was not race-neutral. The United States Supreme Court explained in *Hernandez* that

"disparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent, but it will not be conclusive in the preliminary race-neutrality step of the *Batson* inquiry. An argument relating to the impact of a classification does not alone show its purpose. Equal Protection analysis turns on the intended consequences of government classifications. Unless the government actor adopted a criterion with the intent of causing the impact asserted, that impact itself does not violate the principle of race-neutrality. Nothing in the prosecutor's

explanation shows that he chose to exclude jurors who hesitated in answering questions about following the interpreter *because* he wanted to prevent bilingual Latinos from serving on the jury." 500 US at 362. (Emphasis in original; citation omitted.)

Here, there was no showing that the prosecutor chose to exclude jurors who were unemployed *because* he wanted to prevent racial minorities from serving on the jury. Further, the reason was related to Williams' service in this case. Williams was actively seeking employment in the food industry. Here, the state wanted jurors who would empathize with the employees who were harassed by defendant and McIntosh. In this case, details of Williams' other life experiences permitted the prosecutor reasonably, and race-neutrally, to draw inferences about her current biases. *See State v. Henderson, supra,* 315 Or 1, 8, 843 P2d 859 (1992).

■ The prosecutor also challenged Williams because she was too "eager" to agree with defense counsel that a prior felony conviction is not evidence of a defendant's guilt. The prosecutor explained that, although that was a correct statement of the law, he felt uneasy because of her demeanor. Under OEC 609, the state may use a felony conviction for impeachment purposes. The prosecutor also felt that Williams expressed her belief in the maxim that "the customer is always right" "quite adamantly." As the prosecutor explained, in this case, it was the state's position that Clark was justified in ordering defendant and McIntosh to leave the restaurant, that they refused to leave and assaulted Clark, and that Clark merely defended himself. The defense argued that defendants were mistreated by Clark when they exercised their right as customers to complain. Here, defendants were more seriously injured than Clark. From the state's point of view, Williams was not a good prospective juror. Finally, the prosecutor challenged Williams because he saw that the prospective juror seated next to her moved away as soon as an empty seat became available suggesting to him that the panel was noncohesive.[3] Essentially, the prosecutor

---

[3] Defendant argues that the prosecutor's decision to challenge Williams, instead of the prospective juror who moved away, demonstrates purposeful discrimination because Williams was a member of defendant's race and the other prospective juror was not. However, the defense had already challenged the prospective juror who had moved away from Williams before the state challenged Williams.

challenged Williams because of his assessment of her demeanor. However, as the Supreme Court explained in *Henderson*, *supra*, "[a] prospective juror's demeanor is a legitimate and reasonable race-neutral basis for a prosecutor's decision to challenge that juror." 315 Or at 7. We conclude that the prosecutor's reasons for challenging Williams were race-neutral.

■ We next turn to the trial court's finding that defendant did not prove purposeful discrimination. Whether a prosecutor intended to discriminate on the basis of race in exercising a peremptory challenge is a question of fact. *Hernandez v. New York, supra*, 500 US at 364. We review the trial court's finding on that issue for clear error. *State v. Henderson, supra*, 315 Or at 9. Here, the trial court determined that defendant had failed to prove that the prosecutor acted with the requisite discriminatory intent when he challenged Williams. As the Court explained in *Hernandez*:

> "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " 500 US at 365. (Citation omitted.)

Here, the trial court's finding was not clearly erroneous. We note that the state's primary witness, Clark, who was the victim in this case, was also African-American. Defendant has not established that the prosecutor's peremptory challenge to prospective juror Williams violated his right to equal protection of the laws under the Fourteenth Amendment.

Affirmed.