Argued and submitted February 12, reversed and remanded for new trial
May 27, petition for review denied December 22, 1998 (328 Or 194)

# STATE OF OREGON,
*Respondent,*

*v.*

# PEGGY CARROLL ROSS,
*Appellant.*

## (9608-46110; CA A97506)

961 P2d 241

William Uhle argued the cause and filed the brief for appellant.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong,* Judges.

EDMONDS, J.

---

* Armstrong, J., *vice* Leeson, J., resigned.

**EDMONDS, J.**

After a trial to a jury, defendant was convicted of driving under the influence of intoxicants. ORS 813.010. She appeals and assigns error to the trial court's denial of her objection to the prosecutor's peremptory challenge of a prospective juror, arguing that the peremptory challenge violated her right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.[1] Defendant also contends that she should have been granted a new trial, ORCP 64 B, after the trial judge submitted revised jury instructions to the jury without first notifying counsel as required by ORCP 59. We reverse.

Police officers arrested defendant, who is African-American, for driving under the influence of intoxicants. Her first trial resulted in a hung jury, and the trial court declared a mistrial. During jury selection for her second trial, the prosecutor exercised one of the state's three peremptory challenges to exclude the only African-American on the jury panel. Defendant objected on the ground that the peremptory challenge denied her equal protection of the laws under *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986). In *Batson*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment forbids prosecutors from challenging prospective jurors solely on account of the juror's race or based on the assumption that a minority juror will be unable to consider impartially the state's case against a minority defendant. *Id.* at 88-89. Defendant argued to the trial court that the prosecutor's exercise of the peremptory challenge was purposeful discrimination because the same prosecutor had exercised two of the state's three peremptory challenges in her first trial to excuse the only African-Americans on that jury panel. Thus, over the course of her two trials, the state had used three of its six peremptory challenges to excuse the only African-Americans on the panels. The state responded to defendant's objection by offering several reasons for excluding the juror that it contended were race neutral.

---

[1] The Fourteenth Amendment provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Defendant raises no state law claim. Accordingly, we decide this case under federal law.

In *Hernandez v. New York*, 500 US 352, 111 S Ct 1859, 114 L Ed 2d 395 (1991), the Supreme Court reiterated the three-step *"Batson"* test for determining whether a peremptory challenge of a prospective juror violates a defendant's rights under the Equal Protection Clause.

> "First, the defendant must make a *prima facie* showing that the prosecutor has exercised [a] peremptory challenge[ ] on the basis of race. * * * Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror[ ] in question. * * * Finally, the trial court must determine whether the defendant has carried [her] burden of proving purposeful discrimination." *Id.* at 358-59 (citations omitted; emphasis supplied).

In the present case, the trial court ruled that defendant failed to make a *prima facie* showing of purposeful discrimination, and, in the alternative, that the state's articulated reasons for challenging the prospective juror were race neutral. The court ultimately found that defendant had failed to carry her burden of proving purposeful discrimination.[2]

---

[2] For the sake of clarity, we set out the trial court's ruling in its entirety.

"In this particular case, I am, in reviewing all of this, not inclined to find that the *prima facie* case has been made out by the defendant. I recognize, [defendant], that it may appear, based upon your observation of what happened in the first trial, and what has happened in this trial, that there has been purposeful discrimination. But in the end, the decision rests with the trial court, and in the cases which I read over the lunch hour, the court held that the trial court is really the last place where the decision is made whether or not the burden has been met by a person in your shoes. And I am concluding based upon what I understand now the steps to be, that that showing hasn't been made.

"I base that on the fact that, in part, I know [the prosecutor], and I know that he does not exclude jurors based on their race. And the fact that it happened twice before I can understand would make you feel that the exclusion was based upon the race of the jurors. But without more, without more than just that, I don't feel that the initial showing has been made that's required by the case law.

"With respect, however—in case this goes up, and in case there's an appeal based upon my ruling—with respect to whether the state made a race-neutral explanation, I have to tell you this: That as you know, from my initial reaction, I was not happy with this challenge. And I wasn't happy, because in general I'm not happy with the fact that people can be made to feel that the system discriminates against them on the basis of their race. That is very troubling to me, and I think what I did was to substitute my judgment, perhaps, for that of the prosecution.

"But when I look at the reasons articulated, I can tell you I still have some concerns, especially based on your candid answer to my last question, that [the

■ Beginning with the first step of the *Batson* analysis, we disagree with the trial court's ruling that defendant failed to establish a *prima facie* case of purposeful discrimination. A defendant may establish a *prima facie* case by

"showing that he or she is a member of a cognizable racial group and that the prosecutor has exercised a peremptory challenge to remove from the jury panel a member of the defendant's race. The defendant must then show that the facts and other relevant circumstances of the jury selection process *raise an inference* that the prosecutor exercised the peremptory challenge for the purpose of excluding a member of the defendant's race. * * * *Relevant circumstances that support that inference include, but are not limited to, a 'pattern' of strikes against prospective jurors of the defendant's race* and the nature of the questions and statements made by the prosecutor during *voir dire*." *State v. Henderson*, 315 Or 1, 4, 843 P2d 859 (1992) (emphasis supplied; citations omitted).

In this case, it is undisputed that defendant is African-American and that the same prosecutor exercised half of

___

juror] knows your witness through community activities. It makes sense to me in the sense that the name is so unusual. Now, I grant you, [the juror] doesn't seem to give a description of your witness that matches the description that your attorney has given to me. But it seems likely to me that with that name and with the fact that your witness is a community-based and interested person, there is a likelihood that they have crossed paths. And I believe that any time a juror is sitting in judgment on a case where it is likely that the witness is known to the juror, that it is unlikely that the juror can put that out of their minds in evaluating that witness' testimony. That is a factor on which the state is entitled to rely in challenging the juror.

"Additionally, when I went back through my notes, I did notice that [the juror] had indicated that he had quarreled or challenged a ticket that he had received earlier. Not a big deal, in and of itself, but it is certainly a race-neutral basis for challenging the juror.

"Based on that, I would find that the state did articulate race-neutral reasons for challenging the juror. So I am finding that the burden has not been met as required under the law. I told you before I made my final decision I was going to revisit the law. My initial reaction was based probably on an emotional response that I had to you and to the predicament in which I am sure you find yourself and your perceptions right now that the system isn't fair. And I don't like it when people are in my courtroom and have that perception. But when I reviewed the law, I'm satisfied that I have a complete understanding of it now, and that the decision I initially made was in error. And that's the reason I'm doing what I'm doing. So I am, in essence, going to allow this challenge [of the juror]."

the state's peremptory challenges to exclude all of the African-American prospective jurors from the two panels. We hold that that conduct is sufficient to raise an inference of purposeful discrimination and therefore to establish a *prima facie* case. Accordingly, the burden shifted to the state to demonstrate a race-neutral reason for the peremptory challenge.[3]

■■ Whether the prosecutor's proffered explanation for challenging a prospective juror is race neutral is a question of law. *Hernandez* held that

"[a]t this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." 500 US at 360.

In the second step of the inquiry, the prosecutor's proffered reason does not need to be persuasive or even plausible to meet the burden of production, *Purkett v. Elam*, 514 US 765, 768, 115 S Ct 1769, 131 L Ed 2d 834 (1995), but it must be reasonably specific and related to the case. *Henderson*, 315 Or at 4.

■ The prosecutor offered the following reasons for exercising the peremptory challenge: The challenged juror indicated that he might have met one of the witnesses for the defense at community events; the juror had contested a traffic ticket; he had responded to defendant's *voir dire* in a manner that the prosecutor believed indicated that the juror was defense oriented, and his occupation as a community based crime prevention specialist suggested to the prosecutor that he might be less likely to believe the testimony of police officers whom the state intended to call as witnesses.

---

[3] We address the first step of the *Batson* analysis primarily for instructive purposes regarding a defendant's burden in establishing a *prima facie* case. Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a *prima facie* showing becomes moot. *Hernandez v. New York*, 500 US 352, 359, 111 S Ct 1859, 114 L Ed 2d 395 (1991); *see also State v. Henderson*, 315 Or 1, 5 n 3, 843 P2d 859 (1992); *State v. Millage*, 125 Or App 92, 95, 864 P2d 868 (1993).

After receiving evidence regarding the prospective juror's acquaintance with the defense witness, hearing argument from counsel and reviewing the pertinent case law, the trial court concluded:

"And I believe that any time a juror is sitting in judgment on a case where it is likely that the witness is known to the juror, that it is unlikely that the juror can put that out of their minds in evaluating that witness' testimony. That is a factor on which the state is entitled to rely in challenging the juror.

"Additionally, when I went back through my notes, I did notice [that the prospective juror] had indicated that he had quarreled or challenged a ticket that he had received earlier. Not a big deal, in and of itself, but it is certainly a race-neutral basis for challenging the juror. Based on that, I would find that the state did articulate race-neutral reasons for challenging the juror."

We agree with the trial court that the prosecutor furnished race-neutral reasons for challenging the juror.

■■■■ When a prosecutor has provided a race-neutral explanation, the burden shifts back to the defendant to prove that the explanation given is a pretext for discrimination. *Hernandez,* 500 US at 363. Whether a prosecutor nevertheless intended to exercise a peremptory challenge on the improper basis of race is a question of fact. *Millage,* 125 Or App at 98. As the court explained in *Hernandez*:

"In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " 500 US at 365.

The trial court explained how it arrived at its ultimate finding that defendant had failed to prove purposeful discrimination.

"I recognize, [defendant], that it may appear, based upon your observation of what happened in the first trial, and

what has happened in this trial, that there has been purposeful discrimination. But in the end, the decision rests with the trial court, and in the cases which I read over the lunch hour, the court held that the trial court is really the last place where the decision is made whether or not the burden has been met by a person in your shoes. And I am concluding based upon what I understand now the steps to be, that that showing hasn't been made.

*"I base that on the fact that, in part, I know [the prosecutor], and I know that he does not exclude jurors based on their race."* (Emphasis supplied.)

It is apparent that the trial court did not confine its credibility factfinding role to the *voir dire* proceeding. Rather, it relied, in part, on its *personal* knowledge about the prosecutor. While we will give deference to a trial court's finding that a prosecutor actually intended to strike a prospective juror for race-neutral reasons and will presume that the court fulfilled its constitutional duty to ferret out purposeful discrimination, *see Hernandez*, 500 US at 365, we cannot affirm a finding based on a court's personal, out-of-court, off-the-record knowledge about the prosecutor. To do so injects into the decision-making process an improper component because the trial court acted both as a character witness, vouching for the credibility of the prosecutor, and as the factfinder. *See generally, Lamont's Apparel, Inc. v. SI-Lloyd Associates*, 153 Or App 227, 234, 956 P2d 1024 (1998) (holding that a trial court may not rely on personal knowledge gained through out-of-court discussions with a witness in the case to decide the issues in the case.)

It could be that the prosecutor acted with race-neutral reasons for exercising the peremptory challenge, but the process of making the decision about that issue was tainted by the trial court's consideration of the contacts with the prosecutor outside the confines of the trial. The integrity of the process to prevent the challenge of jurors for other than race-neutral reasons is compromised if a trial court is permitted to consider its personal knowledge about the prosecutor. A trial court must confine its decision-making process to what occurred during *voir dire* and the evidence that is probative on that issue. Consequently, by including the subjective opinion about the prosecutor's character in its consideration of the issue, the trial court erred in making its

assessment about whether defendant carried her burden of proof regarding purposeful discrimination. Under these circumstances, the only appropriate remedy is to reverse the trial court and remand for a new trial.[4]

In view of our disposition, we do not reach defendant's second assignment of error, which may not rise again on retrial.

Reversed and remanded for new trial.

---

[4] In *State v. Henderson*, 94 Or App 87, 93, 764 P2d 602 (1988), we remanded that case to the trial court to determine whether the prosecutor had a race-neutral explanation for the peremptory challenge and to make a factual finding about whether the prosecutor should be believed. We held that if the trial court made such a finding, then the defendant's conviction was to be reinstated. Otherwise, a new trial was to be granted. In this case, it would be unfair to the trial court and to defendant to enter such an order on remand that could reinstate the conviction in the light of the circumstances underlying the trial court's decision. Also, remand for a different trial judge to make such a determination is not a practical solution because the credibility of the prosecutor's explanation must be determined by what occurred within the courtroom at the time of the objection to the challenge to the juror. Consequently, we order that a new trial occur on remand.