Argued and submitted December 23, 1999, vacated and remanded July 18, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## GREGORY CLAY,
*Appellant.*

9702-31436; A98207

27 P3d 1110

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals his conviction for possession of a controlled substance. Defendant is African-American. He argues that the trial court's disallowance of his objection to the state's peremptory challenges of all three of the African-American jurors in the 27-person jury pool violated his right to equal protection under the Fourteenth Amendment to the federal constitution. He relies on *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986), and related cases as support for that argument. We agree with defendant and vacate and remand.

During *voir dire*, the prosecuting attorney informed the prospective jurors that the state's only witness was a police officer, whose credibility was central to the state's case. The prosecutor asked the jurors if any of them had ever been charged with drug offenses. Two jurors, both Caucasian, replied that they had been convicted of drug offenses. The prosecutor then inquired about the jurors' experiences with and attitudes about the police. Two of the three African-American jurors testified that they had had experiences with the police that they regarded as unpleasant in connection with encounters of a traffic-stop nature. The third testified that she had once witnessed a police beating of "some guy" outside her residence. She testified further that, nevertheless, "I believe in police officers, they do try to work to do their job and help [take] care of the people." Similarly, another of the prospective African-American jurors answered "no" when the prosecutor asked whether her experience "would make it hard for you to listen to an officer telling you what happened on a separate occasion."

One of the Caucasian jurors who had been convicted of a drug offense, offered the following testimony about his encounter with police during his arrest on that charge:

"Like when they knew they had (indiscernible) middle of spring break at Seaside, and so of course a lot is going on, and so then I ran — they turned on all the red lights into flashing red lights, so I had ran through the — I didn't come to complete stop, a California stop, and then took the turn, so then they were watching and pulled me over. I had no idea where the town or where the schools are or anything

like that. So they get me out of the car and they search for this and that. So they asked do I have anything else in the car when they found the marijuana, and I said, 'no, I didn't.'

"And then they found something to smoke it with, so then they got mad at me for not telling them about that. And I said, 'you asked if I had any more of this in the car and I said no.' I said, 'you didn't ask me if I had anything to use it for.' I mean, obviously I would, you know. So then they got mad about that, and then he said—or whatever, and they were going to give me a ticket and everything was fine. And one of his buddies came and said, 'oh, you're within a thousand feet of the school, we're going to take you to jail.' It was basically over and done with. I didn't know (indiscernible) anytime you pulled over by a thousand feet of a school. I mean, the whole court proceeding, I had just pled guilty and stuff, but I told the judge take into consideration that I had no intention of giving it to kids or dealing it in the middle of the night and stuff. I just thought that they were trying to make more out of it than it really was.

"[PROSECUTOR]: Did you feel that the judge actually took those things into consideration?

"[JUROR]: Yeah, he did. The cop (indiscernible) actually kind of (indiscernible) situation, and they were going to take my license away and this and that. He said there was no need for that so—"

The prosecutor did not peremptorily challenge that juror.

After defendant objected to the peremptory removal of the three African-American jurors, the prosecutor offered the following explanation for her actions:

"[PROSECUTOR]: Yes. Your Honor, for [juror 1], when she was asked about prior experiences with police officers she talked about an experience where she felt that a police officer was singling her out, a female police officer pulls her over every time she goes by this area and that she lied about the reason she was pulled over, and then I forget the specifics, but she then lied to cover up that lie. My concern was, of course, the officer is our only witness in this case. She said that she has been treated unfairly by a police officer and that's her opinion.

"I also stated that another thing that kind of made that decision easier was the fact that she had been a plaintiff in

a civil case, and I have an opinion that in cases like these where it's our position that the defendant is making excuses for his misbehavior, that a person who is a plaintiff is more likely to make excuses and perhaps believe those excuses, reasonable or not.

"\* \* \* \* \*

"[PROSECUTOR]: As for [juror 2], there were actually two different reasons that I stated at the time. I have forgotten about another. When another juror talked about police acting hastily, I saw Ms. Johnson nod in the background. I believe that she was in agreement with that. She also stated an incident—at least one incident she had been treated unfairly by police again in a traffic stop incident.

"\* \* \* \* \*

"[PROSECUTOR]: As for [juror 3], she was the other juror who stated that she believes that police act hastily. She talked about an experience where she looked out her window and saw police beating up another person and that that was her example of how police act hastily. I think that was the only specific. And I was concerned about that again because the police officer is our only witness."

When asked to explain why she had not also exercised a peremptory challenge against the Caucasian juror, the prosecuting attorney stated:

"My understanding of what [the juror] said was that these particular police officers had gone too far. \* \* \* He felt that somebody searched his car without provocation, but there's a difference between that and stating blanket, I believe that the police often go [too] far, and so that was the basis for my decision."

The trial court ultimately ruled:

"Well, I must say, I allowed the excusals, the challenges, because I don't have any appellate decisions at this point that tell me that the reasons given are not to be allowed as valid reasons. I must say the view of this court is if the only reason to excuse a racial minority juror is that they've had bad experiences with the police, that is the equivalent of a race-based challenge by definition. I mean, it seems to me that is the whole basis for cases like *Batson* is to have people on the jury who have different experiences with police officers than the majority of the population.

"I am going to wait until we have an appellate decision, but in this case it's very clear that the two jurors were excused only for that reason.

"\* \* \* \* \*

"Well, I suppose if one thinks they're entitled to make a challenge for—on the basis of peremptory, you don't need to try to rehabilitate somebody, but I certainly don't mean my comments as a criticism of the District Attorney. I think as a good attorney one takes advantage of whatever the rules seem to allow, but my own observation, as I indicated, is that this is now a race-based jury and it is inappropriate and if I thought I had the authority I would have not allowed at least two of those challenges. I would have allowed the challenges to [juror 1]. But in the current state of the law, frankly \* \* \* I think the State can state just about any reason and trial judges are stuck until we have further decisions from appellate courts."

In *Hernandez v. New York*, 500 US 352, 358-59, 111 S Ct 1859, 114 L Ed 2d 395 (1991), the United States Supreme Court summarized the process established in *Batson* for determining whether the peremptory challenge of a prospective juror violates a criminal defendant's equal protection rights:

"First, the defendant must make a prima facie showing that the prosecutor has exercised [a] peremptory challenge[ ] on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror[ ] in question. Finally, the trial court must determine whether the defendant has carried [the] burden of proving purposeful discrimination."

(Citations omitted.)

There is no question that defendant made a *prima facie* showing here. All of the African-American jurors were challenged, and a Caucasian who had had a more serious encounter with the police—the essential reason proffered for the challenge to the African-Americans—was not. *See State v. Henderson*, 315 Or 1, 4, 843 P2d 859 (1992); *State v. Ross*, 154 Or App 121, 961 P2d 241, *rev den* 328 Or 194, 977 P2d 1172 (1998).

In the second stage of the process, as explained in *Hernandez*,

> "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Hernandez*, 500 US at 360. *See also Ross*, 154 Or App at 126, and cases there cited (prosecutor's proffered "race neutral" reason need not be persuasive in order to carry burden of *production*, but must be "reasonably specific and related to the case").

Because the third stage is decisive here, we will assume for the present that the prosecuting attorney's proffered explanation satisfied the second stage of the inquiry. In *Hernandez*, the Supreme Court explained the third stage:

> "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind on demeanor and credibility lies 'peculiarly within a trial judge's province.' "

*Hernandez*, 500 US at 365 (citations omitted). The question at the third stage is treated as one of fact. *See State v. Millage*, 125 Or App 92, 98, 864 P2d 868 (1993).

It is not clear in this case whether the trial court failed to answer the third question or, having answered it, failed to make the ruling that followed from its answer. In either event, the court erred.

The court stated in its ruling that "this is now a race-based jury[.]" That statement *can* be read as reflecting a view that the prosecutor acted with a discriminatory purpose; it can also be read as a description of the consequences of the prosecutor's actions rather than her motivation.[1] What is less

---

[1] It appears that the court regarded the police encounters and ensuing reactions rationale as the essence of the prosecutor's explanation. The gist of the ruling

ambiguous, and more clearly wrong, was the later statement in the ruling that the prosecution "can state just about any reason and trial judges are stuck until we have further decisions from appellate courts." That statement is incorrect. As indicated above, a host of decisions by the United States Supreme Court, the Oregon Supreme Court and this court, all except *Ross* having been rendered before the trial in this case, have uniformly held that trial judges are required to make a finding about whether the prosecuting attorney's proffered racially neutral explanation is to be believed and whether the prosecutor acted with purposeful discrimination.[2] Assuming that the "race-based jury" comment was not meant as a finding about the prosecutor's intent, the trial court failed to make the required finding.

The state argues on appeal that "[i]n the absence of a specific finding of discriminatory purpose, this court must presume that the trial court found to the contrary, given its ultimate ruling." The principle underlying that argument, derived from *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), is inapplicable here. As we have noted, the court was required by the cited authorities to *make* a finding. It either failed to do so or, having made a finding adverse to the state, failed to make a proper disposition of the objections or the proceedings consonant with that finding. Furthermore, the court's statement that "trial judges are stuck" with accepting "just about any reason" that a prosecutor offers for peremptory challenges misstates the relevant legal principle, which means that the court's ruling cannot be understood to embody an implicit finding under the correct legal test.

The remaining question is what disposition of this appeal follows from what we have said. In *Ross*, where the trial court made a finding in favor of the state on the basis of

---

was that such an explanation has never been held to be *ipso facto* racially motived, by its terms. The court does not appear to have considered whether, given the fact that the state made no peremptory challenge against the Caucasian juror, the terms of the prosecutor's explanations for the challenges to the three African-American jurors were themselves pretextual.

[2] In addition, ORCP 57 D(4), promulgated in 1995, substantially reiterates the requirements of *Batson* and its progeny. *See* ORS 136.230(4) (makes ORCP 57 D(4) applicable to criminal trials).

an improper consideration, we reversed and remanded for a new trial. We explained:

> "In *State v. Henderson*, 94 Or App 87, 93, 764 P2d 602 (1988), we remanded that case to the trial court to determine whether the prosecutor had a race-neutral explanation for the peremptory challenge and to make a factual finding about whether the prosecutor should be believed. We held that if the trial court made such a finding, then the defendant's conviction was to be reinstated. Otherwise, a new trial was to be granted. In this case, it would be unfair to the trial court and to defendant to enter such an order on remand that could reinstate the conviction in the light of the circumstances underlying the trial court's decision. Also, remand for a different trial judge to make such a determination is not a practical solution because the credibility of the prosecutor's explanation must be determined by what occurred within the courtroom at the time of the objection to the challenge to the juror. Consequently, we order that a new trial occur on remand."

*Ross*, 154 Or App at 129 n 4.

The situation here is more akin to *Ross* than *Henderson*. In the first place, it is not wholly clear that the trial court has not already made a finding adverse to the state. Assuming that the trial court did not already make a finding of intentional discrimination, its apparent view that no dispositional finding had to be made was founded on the misperception that it had to accept "just about any reason" that the prosecutor gave for her actions. Given that misperception, it is unlikely that the court gave sufficient attention to matters bearing on the prosecutor's credibility at the time of the challenges and the objections for it to make an informed decision now.

Nevertheless, we believe that the trial court should be given an opportunity to consider whether it can now determine if the prosecutor acted with a discriminatory motive in making her peremptory challenges to prospective jurors. We therefore vacate the judgment and remand the case with instructions. If the court concludes that it is not now in a position to make a finding on whether the prosecutor acted with a discriminatory motive, or if it concludes that it can make such a finding and it finds that the prosecutor acted with a

discriminatory motive, it shall order a new trial. If it concludes that it can make a finding on whether the prosecutor acted with a discriminatory motive and it finds that the prosecutor did not act with such a motive, it shall reinstate the judgment.

Vacated and remanded.